**JACK O'DONNELL CHEVROLET, INC.,**
**Plaintiff,**

v.

**Ken SHANKLES and Fort Payne Bank,**
**Defendants.**

**No. 67 C 930.**

United States District Court
N. D. Illinois, E. D.

Oct. 27, 1967.

---

10. Transcript Of Proceedings Held On November 6, 1967 In Connection With Bond Pending Appeal, pp. 30–31.

Elbert F. Elmore, Midlothian, Ill., for plaintiff.

Carey, Filter, Murray & White, Chicago, Ill., for defendant Fort Payne Bank.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Defendant Fort Payne Bank's Motion to Dismiss

Plaintiff corporation, is an automobile dealership, incorporated in Delaware, and maintaining its principal place of business in Illinois. Between December 21, 1966, and February 18, 1967, plaintiff allegedly sold and delivered certain automobiles to defendant Ken Shankles in Illinois. Between those dates, Shankles executed several drafts totaling $14,475, upon the defendant Fort Payne Bank, an Alabama corporation, as purported payment for the autos. The drafts were forwarded in the regular course of business by the Mutual Bank of Chicago, the depositary bank, to the Fort Payne Bank for payment.

It is alleged that the latter received the drafts in the regular course of business, and returned them unpaid because of insufficient funds in the account of Ken Shankles, but did not do so until on or about March 23, 1967, and further, allegedly did not advise the plaintiff of its dishonor of the drafts as required by law.

The complaint is in four counts. Count I seeks recovery from Shankles for the transactions enumerated above. Count II charges the Fort Payne Bank with failing to give timely notice of dishonor to plaintiff as required by Section 4–302 of the Uniform Commercial Code of Alabama, and seeks recovery of $14,-475. In Count III, plaintiff charges that the Fort Payne Bank negligently failed to notify the plaintiff of dishonor within a reasonable time, with the alleged result that plaintiff was "hindered and prevented from collecting and receiving the amount of said drafts from Ken Shankles at a time when said Shankles had sufficient assets and sufficient funds deposited with defendant Fort Payne Bank to properly pay said drafts." Finally, in Count IV, plaintiff charges that Shankles and the Fort Payne Bank conspired together to the end that the Bank would honor and pay only those drafts drawn by Shankles which Shankles or his agents gave authority to honor and pay, even though other items or drafts were properly payable. Plaintiff alleges that pursuant to the conspiracy, the defendants caused the drafts payable to plaintiff not to be honored or paid even though they were properly payable, while in the meantime agreeing to pay, or paying, other items drawn by Shankles payable to other payees, even though they were received some time after the drafts payable to plaintiff were presented for payment.

The Fort Payne Bank moves to quash the summons, served upon it at its Alabama facility, on the ground that the service is invalid because this court lacks in personam jurisdiction over the Bank.

■ Out of state service of process is permitted in Illinois under the provisions of Chap. 110, Sections 16 and 17 (2), Ill.Rev.Stat.[1] Out of state service is permitted in the federal courts, under

---

1. "Section 16 Personal Service outside State

"Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; * * *"

"Section 17(2) Service of process upon any person who is subject to the juris-

Rules 4(d) (7) and 4(e), when the law of the state in which the district court sits allows such service in its own courts.

Hence, extraterritorial service of process as such, is permissible in this court. However, if jurisdiction over the person of the defendant is lacking, service of summons upon him lacks a jurisdictional foundation upon which to stand, and must be quashed. Apparently, the plaintiff herein posits jurisdiction over the Fort Payne Bank upon its alleged commission of tortious acts within Illinois. The Bank relates that it has maintained no offices in Illinois, has sent no agents into this state, has transacted no business here, and has committed no tortious acts in Illinois. It thus contends that it cannot be subjected to *in personam* jurisdiction in this cause.

Section 17 of the Illinois Civil Practice Act, constitutes a statutory basis for jurisdiction over persons involved in certain isolated activities within the state. The statute provides: (in pertinent part)

"Sec. 17 Act submitting to jurisdiction—Process

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

\* \* \* \* \* \*

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an ac-

tion in which jurisdiction over him is based upon this section."

Section 17 was held constitutional in Nelson v. Miller, 11 Ill.2d 378, 143 N.E. 2d 673 (1957). It stemmed from the Supreme Court's elaboration of the due process requirements governing *in personam* jurisdiction, which demands that the defendant have sufficient contact with the forum state so that "the maintenance of the suit does not offend 'traditional notions of fair play and sub stantial justice.'" International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945). Section 17 was intended to assert jurisdiction over nonresidents to the fullest extent permitted by the due process clause. Nelson v. Miller, supra, at 389–390, 143 N.E.2d 673.

In Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), an Illinois resident sued a foreign corporation which did no business in Illinois, had no office in Illinois, maintained no agents in Illinois, sold no products in Illinois, and solicited no business in this state. The defendant manufactured a safety valve in Ohio to be used in a hot water heater and sold it to another foreign corporation which included the safety valve in its hot water heater. The heater was sold to plaintiff. It exploded in Illinois and caused plaintiff injuries in this state. Plaintiff charged the safety valve manufacturer with negligence. Service was made out of state, and defendant moved to quash. The Illinois Supreme Court stated in upholding jurisdiction over the nonresident corporation: (22 Ill.2d at 435–436, 176 N.E.2d at 762)

"The wrong in the case at bar did not originate in the conduct of a servant physically present here, but arose instead from acts performed at the

diction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided

in this Act, with the same force and effect as though summons had been personally served within this State."

place of manufacture. Only the consequences occurred in Illinois. It is well established, however, that in law the place of a wrong is where the last event takes place which is necessary to render the actor liable. Restatement, Conflict of Laws, sec. 377. * * *

" * * * We think it is clear that the alleged negligence in manufacturing the valve cannot be separated from the resulting injury; and that for present purposes, like those of liability and limitations, the tort was committed in Illinois."

■ This being a diversity case, we must follow the law as represented by *Gray*. Canvas Fabricators v. William E. Hooper, etc., 199 F.2d 485 (7th Cir. 1952). Subsequent cases interpreting *Gray* have confirmed that an actor need not be physically present in Illinois in order to commit a "tortious act" which would subject him to jurisdiction under Sec. 17(1) (b). McMahon v. Boeing Airplane Co., 199 F.Supp. 908, 909 (N.D. Ill.1961); Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961).

The cases cited by defendant[2] in support of his motion, antedated *Gray*, and were based upon an outdated conception of due process requirements, namely that the actor must have been physically present in the state of injury, and accordingly they are no longer controlling. It cannot be seriously contended any longer that the personal "presence" of a nonresident defendant is necessary, in this state, in order for it to be subjected to the *in personam* jurisdiction of this court. See Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 254, 219 N.E.2d 646 (1966).

The sole issue for decision is whether the Fort Payne Bank has had sufficient contact with Illinois, as required by Section 17, to be amenable to jurisdiction therein.

■ In Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961),

Judge Will recognized the principle stated in *Gray* that a key inquiry in cases where a nonresident defendant commits an act outside of Illinois which has resulting effects within this state, is whether the defendant had reason to anticipate that his activities would have an effect, or in a proper case, that his product would possibly be used in Illinois.

Another factor of importance is whether the defendant enjoyed the benefit and protection of the law of the forum state by virtue of his activities therein. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 440, 176 N.E.2d 761 (1961); Koplin v. Thomas, Haab, and Botts, 73 Ill.App.2d 242, 255, 219 N.E.2d 646 (1966).

■ We must separately consider the three counts in which defendant Fort Payne Bank is named, since sustenance of jurisdiction over one would not necessarily confer jurisdiction over others. For purposes of jurisdictional disputes, each count must be considered as though it constituted a separate complaint. It is undisputed that all of the Bank's overt actions or inactions, as to all counts, occurred in Alabama.

■ Count IV charges the Bank with conspiring with Shankles to honor only those of his drafts drawn upon the Bank which he or an agent gave specific authority to honor or pay. Assuming the allegations of Count IV to be true, as we must for purposes of this motion, we believe that when declining to honor and delaying notice of dishonor of the checks payable to plaintiff, the Bank contemplated that such actions would cause injury to an Illinois corporation in Illinois. Conspiracy involves an element of scienter. Hence, we must assume, in considering this motion, that defendant knew with what checks it was dealing, and that the checks in issue were presented for payment by an Illinois depositary bank whose depositor was

---

2. E.G., Trippe Mfg. Co. v. Spencer Gifts Inc., 270 F.2d 821 (7th Cir. 1959); In- sull v. New York World-Telegram Corp., 273 F.2d 166 (7th Cir. 1959).

an Illinois corporation. The *Gray* definition of a "tortious act" includes both the act of negligence [3] and the resulting injury, and would sustain jurisdiction, in a proper case, under Section 17(1)(b), where only the consequences of the negligent actions occurred in Illinois. Assuming the Bank was aware of the probable consequences of its activities or inactivities, and where they would occur, which we must assume for purposes of this motion, we think Count IV sufficiently alleges the commission of a "tortious act" in Illinois as provided in Section 17(1) (b).

Lending support to this conclusion is the realization that in dealing with an Illinois bank, the Fort Payne Bank had available to it the benefit and protection of Illinois law. To be specific, under Section 4–207 of the Illinois Uniform Commercial Code, Ill.Rev.Stat.1965, c. 26, § 4–207, the Mutual Bank of Chicago as the depositary bank made certain warranties to the Fort Payne Bank. Had those warranties been breached, it is conceivable that the Fort Payne Bank could sue therefor in the Illinois courts under the aforementioned Illinois law.

Finally, we must observe that the plaintiff is an Illinois corporation which was allegedly injured in Illinois. It is manifest that this state has an interest in affording him access to its courts to seek redress for his injuries.

There is no question but that the Bank's contact with Illinois was an isolated incident, and it does not appear from any of the papers that the bank had any other contact with this State other than the instant series of transactions. But the purpose of Section 17 was to create a basis for jurisdiction over defendants having certain isolated contacts with the state, and to reach, but not transgress, the outermost limits of due process. In our judgment, "traditional notions of fair play and substantial justice" are fulfilled by subjecting the Fort Payne Bank to jurisdiction under Section 17(1) (b), as to Count IV.

Count II is a contract claim which charges the defendant with failure to provide timely notice of dishonor as required in Section 4–302 of the Uniform Commercial Code of Alabama. Count III is a tort action charging defendant with negligently failing to seasonably notify the plaintiff of dishonor.

■ We do not think jurisdiction is present under Section 17 for consideration of these counts. The major distinction between Counts II and III on the one hand, and Count IV on the other, is that scienter is not an element of the former claims. Unlike when considering Count IV, we need not assume for these purposes that the Bank contemplated the effects of its action in accepting the drafts for payment, or where those effects would occur. Assuming the allegations as pleaded to be true, the assumption does not follow that the Bank or its agents ever knew from where the checks came or that they bore the stamp of the Mutual Bank of Chicago, or that the payee was an Illinois corporation. It is entirely conceivable that the Bank could have violated Section 4–302 and negligently performed its duties without knowing any of the circumstances surrounding the checks, or indeed, that they had even been received. That of course, is not true where a conspiracy is charged, and therein lies the difference between Counts II and III, and Count IV. Absent that knowledge, it is likely that the Bank did not contemplate the transaction of business in Illinois, or being placed in a position where its negligence would or could cause injury in Illinois. Without the element of contemplation of the possible effect of its activities in Illinois, we think jurisdiction cannot be established, in these circumstances, under either Section 17(1) (a) or (b).

■ Although the contemplation test laid down in *Gray* and followed in Anderson v. Penncraft Tool Co., was stated in the context of a tort case arising under Section 17(1) (b), we think

---

**3.** And although *Gray* was not concerned with a tort requiring proof of scienter, it would seem that its rationale should apply, *a fortiori*, to intentional torts.

it has equal application in a contract action premised on Section 17(1) (a). In Ziegler v. Hodges, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967), the Appellate Court stated: (at 215, 224 N.E. at 14).

> "The effect of the *Gray* case cannot be discounted by saying it was concerned with jurisdiction by reason of a tortious act and not the transaction of business. To employ different tests for subsections (a) and (b) is not to implement the intended effect of Section 17; for where jurisdiction is based on a contract rather than on a tort, the interest of the State is not less nor is the burden on the defendant more."

See Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 254, 219 N.E.2d 646 (1966). Thus we think our consideration of defendant's contacts with Illinois may be evaluated similarly as to both Counts II and III.

Perhaps the only other argument which could be advanced to support jurisdiction as to Counts II and III would be that the defendant is in the banking business and should know that in the ordinary course of its business as a payor and a collecting bank, items would be presented to it from banks all over the country and it would likewise present items for collection and payment to banks in other states.[4] Thus, the argument would go, defendant contemplated that its interstate transactions would be felt in other states and it should be subject to jurisdiction in those states for disputes arising therefrom.

But we believe that argument goes too far. It would in effect subject a bank to the jurisdiction of a foreign state regardless of how tangential its contact therewith, and whether the bank had any contemplation that a particular transaction had any relationship whatever to that state. Checks often follow circuitous routes during the clearing process, and in view of the contractual obligations which the various banks make during the chain, it would be unwise policy to hold a bank subject to the jurisdiction of any foreign state regardless of how fortuitous the bank's contact therewith, merely because the bank happens to conduct a business with certain interstate ramifications. And were a bank subjected to such a test of jurisdiction, all other individuals or companies whose activities extended across many state boundaries should be treated the same, regardless of their awareness of the extent or effects of their activities. To subject such persons to suit in a foreign state would be a subversion of the fundamentals of fair play.

The contemplation test strikes a worthy balance. And yet it should not be applied without reference to the explicit facts of each case. The contacts relied upon to establish jurisdiction, of course, will inevitably vary from case to case, and the question must be resolved by deciding what is fair and reasonable in the circumstances. Conceivably, a case may arise where, even though the defendant may have some knowledge of the possible extent or effects of his activities, he should not be subjected to jurisdiction in a remote forum with which he had only minimal contact. But essentially, each case must be decided on its own set of facts.

It would be well to recall that, unlike in *Gray*, there is no necessity to assume as to Counts II and III that the Fort Payne Bank contemplated the transaction of any business in Illinois, or knew that the checks forwarded to it by the Mutual Bank originated in Illinois, or could result in injury therein as a result of its negligence. That of course, is not true with respect to Count IV wherein it is alleged that the Bank conspired to dishonor checks which it knew were properly payable, and which it had knowingly received.

The motion to dismiss is granted as to Counts II and III, but denied as to Count IV.

---

4. Plaintiff did not advance this argument.