INTERNATIONAL MERCHANDISING ASSOCIATES, INC., Plaintiff-Appellant, *v.* LIGHTING SYSTEMS, INC., Defendant-Appellee.

First District (5th Division)   No. 77-1070

Opinion filed September 8, 1978.

Matthias A. Lydon, of Chicago, for appellant.

Lawrence W. Schad and Philip J. Schmidt, both of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, International Merchandising Associates, Inc., appeals from an order of the trial court granting the motion of defendant, Lighting Systems, Inc. (LSI), to quash service of process. The sole issue on appeal is whether the trial court properly found that defendant did not have sufficient contacts with the State of Illinois to be subject to the *in personam* jurisdiction of the Illinois courts. We reverse. The pertinent facts follows.

Plaintiff, an Illinois corporation with its principal place of business in Illinois, specializes in the marketing, sale and distribution of various electrical and electronic equipment. Plaintiff and defendant LSI, a Pennsylvania corporation with its principal place of business there, entered into a contract dated October 1, 1974.

According to the contract, LSI, which designs and manufactures lighting equipment and electronic components, agreed that plaintiff would be LSI's "exclusive representative and distributor" of a portable fluorescent light which LSI manufactured. In return, plaintiff was to exert its best efforts in sales of the light and was to assist LSI "in all areas of marketing such as point of purchase materials, sales aids, packaging and display." Plaintiff also agreed to provide LSI with information pertaining to market research and conditions.

Plaintiff was granted the option of operating on either a commission or a direct purchase basis, and it appears from the record that plaintiff chose

to work under a commission arrangement, in which LSI handled all invoicing and collections and paid plaintiff a commission specified by plaintiff and agreed to by LSI. All the lights were shipped by LSI directly to purchasers, f.o.b., Erie, Pennsylvania. The contract specified the commission to be paid by LSI at the time of execution of the contract.

The area covered in plaintiff's distributorship was the United States and all of its territories and Canada. The contract term was for one year from the date of execution and provided for automatic renewal unless terminated by either party by notifying the other party at least 30 days prior to the anniversary date of the contract.

Plaintiff alleges in its complaint that LSI sold large quantities of its light in situations in which orders were placed directly with LSI, although the orders had resulted from plaintiff's efforts, and that, in spite of requests from plaintiff, LSI has not accounted to plaintiff for such sales and has not paid commissions due to plaintiff under the contract. Plaintiff also alleges that LSI and co-defendant, Floyd Devroy, who had been vice-president of marketing for plaintiff, conspired to interfere in the contractual relationship between plaintiff and LSI, resulting in Devroy's departure from plaintiff's employ, the nonrenewal of the distributorship agreement, and Devroy's subsequent representation of LSI in the sale of the portable fluorescent lights. Co-defendant Devroy is not involved in this appeal.

LSI moved to quash service of process on the grounds that there were not sufficient contacts with the State of Illinois to subject LSI to the *in personam* jurisdiction of the Illinois courts.

According to the affidavits submitted by both parties pursuant to defendant's motion, LSI was never licensed to do business in any foreign State, was not listed in any Illinois telephone directory, and had no registered agent, no bank accounts and no real estate in Illinois. LSI's performance of the contract took place exclusively in Pennsylvania and plaintiff performed solely in Illinois. Plaintiff received telephone calls and correspondence from LSI and its agents, and LSI paid plaintiff by mailing checks to plaintiff's offices in Illinois. It is disputed whether defendant's president ever visited plaintiff's offices.

The parties had been operating under an oral agreement between April 29, 1974, and the date of the contract. The written agreement was prepared by plaintiff in Illinois, was sent to Pennsylvania to be signed by LSI, and was signed by plaintiff in Illinois after it had been returned by LSI. The negotiations, however, were conducted at meetings in Pennsylvania, including the April 29, 1974, meeting at which the oral agreement was made.

Following a hearing, LSI's motion to quash service of process was granted and plaintiff now appeals.

OPINION

■■ Section 17 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 17) provides for the exercise of *in personam* jurisdiction over nonresident defendants. Commonly known as the "long arm statute," section 17 provides in pertinent part:

> "(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> (a) The transaction of any business within this State;
> (b) The commission of a tortious act within this State."

The Illinois Supreme Court has determined that section 17 reflects "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, 679.

■ The requirements of due process were set out by the Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, in which the court stated that a defendant must have "certain minimum contacts with it [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "(326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154.) In *Hanson v. Denckla* (1958), 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283, citing *International Shoe,* the court stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228.) The court reaffirmed these holdings in *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569, when it held that all assertions of State court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.

In applying these principles, the Illinois courts have adopted a case-by-case approach (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 444, 176 N.E.2d 761, 767), analyzing the quality, rather than the quantity, of the acts under the circumstances. (See *Nelson v. Miller,* 11 Ill. 2d 378, 384.) The result has been the development of a flexible test, emphasizing the reasonableness of subjecting the defendant to a foreign jurisdiction. *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 352 N.E.2d 285.

Because each case involving section 17 turns on the specific facts therein, we first note defendant's comments, citing *Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 356 N.E.2d 852, that the complaint was not verified when filed, and that, although the complaint was later verified by plaintiff's executive vice-president, the verification does not state whether it is made upon personal knowledge or upon information and belief, and thus the complaint should be disregarded in deciding the instant case. It is not necessary for us to decide whether or not the facts in the complaint should be considered, for there are sufficient facts contained in the affidavits and counteraffidavits of both parties and in the exhibits submitted with them and the complaint to resolve the issue here.

LSI first maintains that it has not transacted any business in Illinois because it has no offices, agents or assets here, and because the contract with plaintiff was negotiated, entered into and performed in Erie, Pennsylvania, where LSI's corporate headquarters and only physical plant are located.

The actual physical presence of LSI is not required in order to find that it is transacting business within the State under section 17(1)(a). (*Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 219 N.E.2d 646; see also *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324, and *Ziegler v. Hodges* (1967), 80 Ill. App. 2d 210, 224 N.E.2d 12.) A single act of a defendant can be sufficient to find that business was transacted within the State. (*Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27.) It is necessary, however, that the business which is done is related to the cause of action. *Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954.

In *Cook Associates,* the defendant, a Delaware corporation doing business in Michigan, had telephoned the plaintiff, an Illinois employment agency, in response to an advertising flier which plaintiff had distributed. Defendant had later employed someone as a result of that contact and plaintiff eventually sued to recover a fee for its services. The court held that there was sufficient contact with Illinois under section 17(1)(a). The single phone call was all that was needed for defendant to achieve its purpose. Because of the phone call, the parties had entered into a contract for plaintiff to exert its efforts in finding an employee for defendant. The court reasoned that defendant knew, or should have known, that it had entered into a contract with an Illinois agency, that plaintiff would perform from its Illinois offices, and that the fee was to be paid to plaintiff in Illinois, and, if not, that defendant might be liable to suit in the Illinois courts. 14 Ill. App. 3d 965, 970, 304 N.E.2d 27, 31.

In the instant case, it is undisputed that plaintiff's performance under

the contract took place in Illinois and that plaintiff received its payments from LSI in the form of checks sent to Illinois from Pennsylvania. Patricia Schoenberg, plaintiff's executive vice-president, stated in an affidavit that she had received both correspondence and phone calls from LSI's agents. She further stated that both William Zelina, LSI's president, and Timothy Zelina, LSI's general manager, had both visited plaintiff's offices in Illinois, William Zelina at least once, and Timothy Zelina several times. Although the affidavit of William Zelina states that he never visited plaintiff's offices and that all of his dealings with plaintiff took place in Pennsylvania, there is no statement in any affidavit to contradict Ms. Schoenberg's statement that Timothy Zelina had been to plaintiff's Illinois offices several times and we must therefore accept her statement as true. (See *Central Clearing, Inc. v. Omega Industries* (1976), 42 Ill. App. 3d 1025, 1028, 356 N.E.2d 852, 855.) Thus, as in *Cook Associates,* the instant case presents a situation in which LSI knew, or should have known, that its dealings with plaintiff brought it into direct contact with the State of Illinois. Moreover, the actual contacts here are greater than those in *Cook,* because there is here a pattern of telephone and mail contact, as well as actual personal visits to plaintiff's offices by LSI's general manager.

In *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78, this court found that an Ohio-based company which had ordered and received printed advertising copy from an Illinois corporation was transacting business in Illinois for purposes of section 17(1)(a). In *Colony Press* the plaintiff printed advertisements to be used as newspaper inserts. The defendant company had contacted plaintiff in response to some of plaintiff's advertising and the parties entered into a contract. Prepared advertising copy was sent to defendants in Ohio for their review. Defendants returned the corrected samples to plaintiff for printing, and upon completion the advertisements were shipped to defendants f.o.b. Chicago. The court stated:

> "The essential points of this business transaction for purposes of jurisdictional questions are that plaintiff accepted the contract in Illinois and that it was contemplated by the parties that plaintiff's performance would be conducted wholly within Illinois." 17 Ill. App. 3d 14, 18, 308 N.E.2d 78, 80.

The principles of *Colony Press* are directly applicable to the instant case. We agree with plaintiff's contention that the contract was accepted in Illinois. The affidavits of both William Zelina and Patricia Schoenberg show that the contract signed in October 1974 was prepared and drafted by plaintiff in Illinois, sent to LSI in Pennsylvania where it was signed by an officer of LSI, and was then signed by Patricia Schoenberg for plaintiff after LSI had returned the signed contract to Illinois. While it is clear that plaintiff was working under some oral agreement with LSI prior to

the signing of the contract, that prior agreement is not referred to in any way in the written contract. Thus, the place of making the earlier oral agreement had no bearing on identifying the place at which the contract was ultimately accepted. The unsigned contract that was sent to LSI was no more than an offer to LSI which did not become a contract enforceable by either party against the other until the contract bearing LSI's signature was delivered to plaintiff in Illinois. Because the last act necessary to give validity to the contract occurred in Illinois, we conclude that Illinois is the place at which the contract was made. (See generally *Johnston v. Industrial Com.* (1933), 352 Ill. 74, 185 N.E. 191; *Walker v. Lovitt* (1911), 250 Ill. 543, 95 N.E. 631; Ill. L. & Prac. *Contracts* §§68, 281 (1955).) In addition to falling within *Colony Press* because the contract was accepted in Illinois, that case is clearly applicable because the parties obviously intended for plaintiff's performance to be centered at its only offices, which were in Illinois.

LSI relies upon *Artoe v. Mann* (1976), 36 Ill. App. 3d 204, 343 N.E.2d 647, and *Grobark v. Addo Machine Co.* (1959), 16 Ill. 2d 426, 158 N.E.2d 73, both of which are distinguishable from the instant case.

In *Artoe v. Mann,* the plaintiff, an Illinois resident who sold motion picture equipment, visited defendant, a California resident, who built and operated theaters in California and Oregon, at defendant's corporate offices in California. Numerous phone calls were exchanged following the meeting, some of which were initiated by plaintiff, some by defendant. It did not appear that defendant or any of his representatives ever went to Illinois. Plaintiff once again visited defendant's California offices after which defendant mailed a purchase order to plaintiff in Illinois. Included in the purchase order was a provision for the installation, or supervision over the installation, of the equipment for a fixed price plus transportation for the installer or supervisor of the installation. The equipment was received and installed under the supervision of plaintiff. However, the equipment did not function properly and plaintiff sent a representative who failed in his attempts to correct the problem. After crediting defendants for the greater part of the purchase price, plaintiff claimed a balance due and filed suit in Illinois. This court distinguished the *Cook Associates* and *Colony Press* cases, and found that the agreement had been initiated by plaintiff and called for performance by plaintiff in California, and that the mere reception of a formal order through the mail in Illinois was not sufficient to satisfy the section 17 minimum contacts requirements.

Such is not the case here. LSI's contacts with Illinois exceed those of the defendant in *Artoe v. Mann.* In addition to sending the signed contract to Illinois, it appears from the affidavits that agents of LSI, including Timothy Zelina, LSI's general manager, visited Illinois in furtherance of

the business between plaintiff and LSI. Moreover, rather than requiring plaintiff's performance outside of Illinois in a single transaction, the contract called for continuing performance by plaintiff as LSI's "representative" as well as "distributor." As we have previously stated, it was obviously contemplated by the parties that plaintiff's efforts on LSI's behalf were to be made in Illinois, where plaintiff had its only offices.

In *Grobark*, plaintiffs were Illinois residents who entered into a contract with an adding machine manufacturer from New York, by which plaintiffs became exclusive distributors for the "Greater Chicago Trading Area," which covered most of Illinois. The terms of the contract were contained in a letter sent to plaintiffs by the manufacturer. Plaintiffs were allowed to purchase adding machines at a stated discount, and an additional discount was provided for dealer development. To purchase the machines, plaintiffs sent orders to the manufacturer in New York. The orders were processed by the manufacturer and the products were delivered to independent carriers in New York for shipment. The manufacturer was sued by plaintiffs and filed a special appearance to contest the jurisdiction of the Illinois courts. In finding that the defendant manufacturer was not transacting business in Illinois for purposes of section 17(1)(a), the Illinois Supreme Court stated:

"Defendant did not at any time own any interest in any corporation, partnership, or individual distributing its products in Illinois, and did not at any time have the right to exercise any control over the distributors; the relationship between defendant and distributor being that of seller and purchaser * * *.

They [plaintiffs] were not transacting business for the defendant in Illinois; they were transacting business for themselves." 16 Ill. 2d 426, 437, 158 N.E.2d 73, 79.

Unlike the factual situation in *Grobark*, the instant case depicts a relationship between plaintiff and LSI that was more than that of purchaser and seller. In the instant case, plaintiffs did not purchase the fluorescent lights from LSI for resale to third parties. Instead, they procured orders for LSI's product and then sent those orders to LSI. It was the purchasers, not plaintiffs, who paid for the lights.

Furthermore, the terms of the contract itself indicate that, while LSI did not own an interest in plaintiff's company, it nevertheless had the right to exert control over plaintiff in the course of plaintiff's performance. For example, the contract provided for changes in the selling price of the lights to be made by joint agreement only. This gave LSI control over the amount of profit plaintiff could realize from the sales. On the other hand, the selling price provision also gave plaintiff the opportunity to have some control in LSI's business.

In addition to the selling price provision, the course of performance of

plaintiff under the contract indicates that the plaintiff needed LSI's approval to consummate sales agreements. Letters that were attached to the affidavits of both William Zelina and Patricia Schoenberg show that plaintiff apparently negotiated the terms for a test program and distributorship agreement with a third company. The artwork and manuscript were sent to LSI for its review, so that it could make any corrections and indicate its approval. The final contract for that agreement was sent to LSI through plaintiff and returned to plaintiff to be sent on to the third company. The third company was given an exclusive distributorship in the United States, although there were some exceptions within that area. A letter to the company confirming its meetings with plaintiff and revising the agreement with the company was signed by Patricia Schoenberg, under whose signature appeared both the words: "Agreed: Lighting Systems, Inc." and the signature of "T. Zelina," LSI's general manager. Plaintiff was later notified by the company of its schedules for mailings in a letter which also indicated that plaintiff could exert some control over LSI's shipping schedules and would inform the company of LSI's ability to meet the delivery schedules.

Thus, it appears that as LSI's "exclusive representative and distributor," plaintiff did more than procure orders. It also represented LSI both in negotiating contracts between LSI and third parties and in monitoring the performance of those contracts. It is clear, then, that unlike the plaintiff in *Grobark,* the plaintiff in the instant case was transacting business for defendant LSI in Illinois as well as for itself.

Moreover, the contract provided that plaintiff assist LSI in "all areas of marketing" including places to purchase material, sales aids, packaging and display. Plaintiff also was to keep LSI informed of market research and conditions.

William Zelina, in one of his affidavits, states that LSI "only accepted orders which International Merchandising Assoc., Inc., procured." Although the orders were accepted, shipped and billed from Erie, Pennsylvania, both the contract and William Zelina's affidavit show that LSI contemplated that, for the duration of the contract, the only orders they would accept for the purchase of their products were to be orders secured through the efforts of plaintiff and processed through plaintiff's offices in Illinois.

■■ Because of the contemplated performance on LSI's behalf in Illinois, the control which LSI exerted over plaintiff, and plaintiff's continuing performance as LSI's "representative" for any sales in the United States, its territories and Canada, we conclude that LSI was transacting business in Illinois for purposes of section 17(1)(a).

■■ LSI also contends that no tortious act was committed in Illinois and jurisdiction cannot be had over LSI under section 17(1)(b). The effects of

the alleged tortious interference with the distributorship agreement were felt directly in Illinois and the final event needed to establish LSI's liability occurred when the notice of termination of the contract was delivered to plaintiff in Illinois. (*Gray v. American Radiator.*) Moreover, plaintiff has alleged that meetings between co-defendant Devroy and LSI, in furtherance of their plan to interfere with the contract, occurred in Illinois. Thus, we conclude that a tortious act was committed in Illinois for purposes of section 17(1)(b).

In conclusion, it is clear from the circumstances in this case that LSI both transacted business and committed a tortious act in Illinois under section 17. Consistent with the holdings of *International Shoe* and its progeny and of *Nelson v. Miller,* sufficient contacts therefore exist between LSI and the State of Illinois to subject LSI to the *in personam* jurisdiction of the Illinois courts pursuant to its long-arm statute.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

SULLIVAN, P. J., and WILSON, J., concur.