ROY W. GREEN, SR., Plaintiff and Counterdefendant-Appellee, *v.* ADVANCE ROSS ELECTRONICS CORPORATION *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (5th Division)    No. 79-1489

Opinion filed July 25, 1980.

Patrick W. O'Brien and Gary T. Johnson, both of Chicago (Mayer, Brown & Platt, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (William J. Holloway, Thomas L. Browne, and Stephen R. Swofford, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal raises the question of whether a parent corporation that is headquartered in Illinois and its subsidiary that is incorporated in Illinois can properly invoke the jurisdiction of an Illinois court to adjudicate their claim against a nonresident whose acts in Texas allegedly injured the corporations in Illinois. The corporations, Advance Ross Corp. (Advance Ross) and Advance Ross Electronics Corp. (Electronics), are defendants and counterplaintiffs in a breach of contract action brought against them by Roy W. Green, Jr., the former president of Electronics and Advance Ross Steel Corp. (Steel).[1] The counterplaintiffs seek to hold Green's father, Roy W. Green, Sr., liable along with his son for various allegedly tortious acts. Green, Sr., a Texas resident, entered a special and limited appearance to contest the Illinois court's jurisdiction over him. The trial court denied Advance Ross' and Electronics' motion to join him as counterdefendant. The counterplaintiffs appeal from that order pursuant to Supreme Court Rule 304 (Ill. Rev. Stat. 1978, ch. 110A, par. 304). We affirm.

To determine whether the jurisdictional "minimum contacts" exist between Green, Sr., and Illinois, it is necessary to examine the parties' relationships as well as the circumstances which gave rise to the litigation. Green, Jr., who filed the original complaint, and his father, are both Texas

---

[1] Steel, not a party to this suit, is a Texas corporation with its principal place of business in Texas. Like Electronics, Steel is a subsidiary of Advance Ross.

residents. Counterplaintiff-defendant Electronics, an Illinois corporation, has its manufacturing plant in Texas. Electronics is a wholly owned subsidiary of the other counterplaintiff, Advance Ross, a Delaware corporation with its principal place of business in Illinois.

Green, Jr., brought a breach of contract action in the Illinois circuit court pursuant to a clause in his employment agreement with Electronics that required Illinois law to be applied to the construction of the agreement. The complaint charges that Green, Jr., was wrongfully terminated, without the contractual 180-day notice, on October 8, 1978.

Central to this controversy is Green, Jr.'s payment of 6 months' "termination pay" to his father, who had been employed as a consultant to Steel from 1970 until August 8, 1978. His son discharged him on that date at the order of Harve Ferril, who is the president of Advance Ross. Green, Jr. (who had succeeded his father as president of Electronics and Steel in 1975), objected to Ferril's order, but discharged his father anyway. Upon doing so, however, he paid him $26,751 as "severance" pay—an amount equal to six months' salary. Ferril subsequently told Green, Jr., to return the money, but he refused. Consequently, Green, Jr., was discharged, an event that he views as an act of retaliation.

Counterplaintiffs, in contrast, characterize the payment as Green, Jr.'s "unauthorized gift to his father." In count I of their counterclaim, moreover, they charge both Greens with various acts constituting breaches of fiduciary relationship in their former employment capacities. These acts include the following:

(1) [Green Sr. and his son] "caused counterplaintiffs' employees to work for the benefit of the Roy W. Green Company during the normal business day;

(2) caused work to be performed on behalf of the Roy W. Green Company on the premises and facilities of counterplaintiff's corporations without payment to counterplaintiffs;

(3) caused excessive and improper salary to be paid Roy W. Green in that he received both full salary and disability insurance payments;

(4) caused an unauthorized and improper gift from the corporate funds of Advance Ross Steel Corporation * * * to be given to Roy W. Green in the amount of $26,751."

The counterplaintiffs contend that the Illinois long-arm statute (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(b)) reaches Green, Sr., because he committed the above "tortious acts," the effect of which financially injured the parent corporation, Advance Ross, in Illinois. Alternatively, the counterplaintiffs argue that Green, Jr., acted as his father's agent or co-conspirator. The theory is that, since jurisdiction properly lies over Green,

Jr., his contacts with Illinois can be imputed to his father by virtue of their joint activities.

OPINION

Counterplaintiffs' premise concerning the existence of Green, Sr.'s contacts with Illinois is based upon (1) the allegedly adverse economic impact that his acts had on Advance Ross, the Delaware corporation headquartered in Illinois; (2) the affiliation of Green, Sr., with Electronics, the subsidiary that is incorporated in Illinois; and (3) the interrelationship of his acts with those of his son, Green, Jr. We believe that these contacts are insufficient to satisfy either the Illinois long-arm statute or the requirements of due process.

The Illinois statute (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(b)) provides:

> "(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> (a) The transaction of any business within this State;
>
> (b) The commission of a tortious act within this State * * *."

This section has been interpreted as reflecting a "conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, 679.) Thus, a forum State may properly maintain jurisdiction over a nonresident only if there are "sufficient contacts or ties with [the forum] to make it reasonable and just according to [traditional concepts] of fair play and substantial justice." (*International Shoe Co. v. State of Washington* (1945), 326 U.S. 310, 320, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160.) As the United States Supreme Court recently explained, the concept of minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and ensures "that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 580.

In *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, the Illinois Supreme Court sustained the use of our long-arm statute to bring a nonresident defendant within the Illinois court's jurisdiction. In *Gray,* the supreme court held that a foreign corporation, which manufactured a safety valve that was incorporated

into a hot water heater, was subject to Illinois jurisdiction when the heater exploded in Illinois, causing injury to a consumer. The court noted that the wrong at issue originated at the place of the valve's manufacture, Ohio, and that only the consequences occurred in Illinois. The court held that since "the place of a wrong is where the last event takes place which is necessary to render the actor liable," and since "the alleged negligence in manufacturing the valve cannot be separated from the resulting injury, * * * the tort was committed in Ilinois." *Gray*, 22 Ill. 2d 432, 435-36, 176 N.E.2d 761, 762-63.

Counterplaintiffs primarily rely on the rationale of *Gray* to bring Green, Sr., within the reach of the Illinois long-arm statute. The allegedly tortious activity in the instant case, however, cannot be categorized as neatly as was the situation in *Gray*. There, the exploding heater clearly gave rise to various product liability theories. In fact, the "tortious act" requirement of the Illinois statute was not disputed; rather, the key inquiry was whether it was "committed" in Illinois. In the instant case the existence of a "tortious act committed in Illinois" is not so clear. Counterplaintiffs, in their brief, characterize Green, Sr.'s activities as "breaches of fiduciary duty which have the effect of wasting corporate assets of an Illinois corporation [Electronics] and a Delaware corporation whose principal place of business is Illinois [Advance Ross]." The allegation is that Green's acts in Texas—*e.g.*, using personnel paid by Electronics and Steel to work on projects for the Roy W. Green Company—caused a drain of the corporate assets of the corporations in Illinois. Green. Jr., conceded that the nonparty subsidiary, Steel, was "funded from Chicago" by Advance Ross, the parent company. Counterplaintiffs assert that this is a "financial wrongdoing tort," the impact of which was felt in Illinois, and therefore "occurred" in Illinois.

■■ For jurisdictional purposes, allegedly tortious acts need not fit within the technical definition of a tort as long as there is a breach of duty giving rise to liability. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673.) The case law has given a fairly expansive definition to "tortious acts" under section 17(1)(b). Hence, for example, a defendant's alleged violation of a duty of support under the Paternity Act has been held to constitute a tortious act for jurisdictional purposes. (*Poindexter v. Willis* (1967), 87 Ill. App. 2d 213, 231 N.E.2d 1.) Interference with a distributorship agreement, the results of which were felt directly in Illinois, was found to satisfy the tortious act requirement of the statute, (*International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047.) Also, in *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, *aff'd on other grounds* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, we held that defendant's

delivery into Illinois of an allegedly defective airplane was a tortious act sufficient to invoke Illinois jurisdiction, even though the plane was manufactured in Kansas and crashed in Canada.[2]

■■ In the instant case, however, the link between Green, Sr.'s activities in Texas and the alleged economic injury in Illinois is too tenuous to support the exercise of personal jurisdiction. Although Green, Sr.'s activities in Texas may be characterized as "tortious," subjecting him to potential liability to Steel and Electronics, we believe that any resulting injury occurred primarily in Texas. While there may ultimately have been an indirect economic impact in Illinois, we do not believe that this type of tortious consequence, without more, constitutes sufficient contact with this State. Green, Sr., was on the payroll of Steel, the Texas corporation that operates solely in Texas. Counterplaintiffs argue, however, that Green, Sr., also worked for Electronics, which is incorporated in Illinois but doing business in Texas. The deposition of Green, Jr., indicates that his father exercised substantial power at Electronics soliciting and analyzing data regarding bids for Electronics' projects. Yet even assuming that he was a *de facto* employee of Electronics, this does not significantly strengthen his connection with Illinois. Despite the statement that Steel is "funded from Chicago" (implying that the parent, Advance Ross, furnished capital to its subsidiaries) there is no assertion that the three corporations are so integrated as to be one legal entity for jurisdictional purposes. Nor is there adequate support for such a contention.

Thus, the fact that Electronics was incorporated in Illinois, coupled with the fact that both Steel and Electronics are wholly owned subsidiaries of Advance Ross does not somehow transfer the commission of the tortious act to Illinois. As the *Gray* court emphasized, jurisdiction is present "if the act or transaction itself has a *substantial* connection with the State of the forum." (Emphasis added.) (22 Ill. 2d 432, 438, 176 N.E.2d 761, 764.) In *Gray*, the court inferred that the defendant's commercial transactions resulted in substantial use and consumption of its products within this and other States. In discussing a flexible test to apply to the facts of a given case, our supreme court stated that the "relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." (*Gray*, 22 Ill. 2d 432, 440, 176 N.E.2d 761, 765.) The court found that the defendant corporation enjoyed benefits from Illinois "to the extent that its business may be directly affected by transactions occurring [in Illinois]." Finally, the court held that it was "not unreasonable where a cause of

---

[2] In *Braband*, the decedents were Illinois residents who boarded the plane in Illinois. Their dependents were also Illinois residents, and the pecuniary loss under the wrongful death statute occurred in Illinois. Hence, the court found it to be "fair and reasonable" under the circumstances to require the defendant to defend in Illinois.

action arises from alleged defects in [defendant's] product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." *Gray*, 22 Ill. 2d 432, 442, 176 N.E.2d 761, 766.

In contrast with the situation in *Gray*, the facts of the instant case indicate that Green, Sr.'s business-related activities had only the most remote connection with Illinois. At least apart from the counterplaintiff's alternate theory of agency or conspiracy, the facts do not support the inference that Green, Sr., through his Texas business transactions, invoked the benefit or protection of Illinois law. Nor can it reasonably be said that he deliberately placed any "products" into the course of commerce that resulted in injury to Illinois residents.

To support jurisdiction by their contention that Illinois was the place affected by Green, Sr.'s breaches of fiduciary duties, counterplaintiffs cite *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047, where we recognized that where the *effects* of an alleged tortious interference with a distributorship agreement were felt in Illinois, through the Pennsylvania defendant's nonpayment of commissions to the Illinois plaintiff, there existed sufficient jurisdictional contacts between the Pennsylvania defendant and Illinois. It should be noted, however, that the *International Merchandising* opinion also found jurisdiction to be based on the "transaction of business" test of section 17(1)(a) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 17(1)(a)). After we found that the contract between the parties was formed in Illinois and that the Illinois plaintiff was to act on the nonresident defendant's behalf, we held that the nonresident was "transacting business" within the State. Regarding the existence of a tortious act within section 17(1)(b), we stated:

> "The effects of the alleged tortious interference with the distributorship agreement were felt directly in Illinois and the final event needed to establish [defendant's] liability occurred when notice of termination of the contract was delivered to plaintiff in Illinois * * *. Moreover, plaintiff has alleged that meetings between [co-defendants], in furtherance of their plan to interfere with the contract, occurred in Illinois. Thus, we conclude that a tortious act was committed in Illinois for purposes of section 17(1)(b)." 64 Ill. App. 3d 346, 354-55, 380 N.E.2d 1047, 1054.

It is clear that in *International Merchandising* defendants had direct contacts with the forum, sufficient for jurisdiction, other than the mere economic impact of their acts. Meetings between the co-defendants in furtherance of their tortious plan took place in Illinois and notice of the termination of the contract was delivered in Illinois. In the instant case, however, Green, Sr.'s employment relationship with Steel and Electronics

was centered in Texas. As discussed, although Electronics is incorporated in Illinois, its entire manufacturing enterprise operates in Texas. We believe it would be an improper expansion of the long-arm statute for an Illinois court to assert jurisdiction over a nonresident defendant whose only connection with this State is that he works for a Texas-based corporation which is incorporated in Illinois, and which is the subsidiary of the Delaware parent company headquartered in Illinois. We therefore hold that Green, Sr.'s conduct in Texas, regardless of its potentially tortious nature, was not "committed" in Illinois under section 17(1)(b).

Counterplaintiff's third and final basis for asserting the existence of minimum contacts between Green, Sr., and Illinois is the interrelationship of his acts with those of his son, alleged to be either an agency or conspiracy relationship. In their brief, counterplaintiffs initially contend that there exists an agency relationship between the two men, by which Green, Sr., is purportedly invoking the protection of the Illinois courts through the agency of his son. Because Green, Sr., received the disputed payment of $26,751, counterplaintiffs contend, he stands to benefit from his son's litigation in Illinois. This would satisfy one of the minimum contact criteria of *Gray*. As Green, Sr., observes, however, this attenuated agency theory appears to be based primarily on the familial relationship between the Greens. Green, Sr., himself has not voluntarily invoked protection of the Illinois courts. The commonality of interests between the Greens is an inadequate basis to support jurisdiction over Green, Sr., because the due process requirements of minimum contacts must be met as to *each* defendant over whom a State court exercises jurisdiction. *Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571.

The counterplaintiffs' final contention, brought out in their oral arguments, characterize the Greens' activities as a conspiracy. The main distinction between this and the other theories is that, in a conspiracy aimed at Advance Ross, there would be no question of Green, Sr.'s "reasonable anticipation" that the harm of his acts would occur in Illinois—he would *intend* that result. This argument in actuality goes to the *fairness* of subjecting a nonresident to the jurisdiction of a forum State. In *Jack O'Donnell Chevrolet, Inc. v. Shankles* (N.D. Ill. 1967), 276 F. Supp. 998, upon which counterplaintiffs rely, the Federal court for the Northern District of Illinois stated that "a key inquiry in cases where a nonresident defendant commits an act outside of Illinois which has resulting effects within this state is whether the defendant had reason to anticipate that his activities would have an effect * * * in Illinois." In *Jack O'Donnell*, the court held that it was a proper exercise of Illinois' long-arm jurisdiction to require the defendant Alabama bank to defend in Illinois on a conspiracy count because the bank was deemed aware of the possible consequences of its acts and of the fact that the injurious

consequences would occur in Illinois. The bank allegedly had conspired with the defendant Shankles who purchased an automobile in Illinois from the plaintiff corporation, to honor only those drafts drawn upon the bank which Shankles gave specific authority to pay. Subsequently, the bank dishonored the draft that Shankles had used to purchase plaintiff's automobile in Illinois.

Counterplaintiffs' reliance on *Jack O'Donnell Chevrolet*, however, overemphasizes the so-called "contemplation test," which the Federal court attributed to the *Gray* opinion. (276 F. Supp. 998, 1002.) The Illinois Supreme Court in *Gray* stated:

> "[W]here the alleged liability arises, as in this case, from the *manufacture of products presumably sold in contemplation of use here*, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State." (Emphasis added.) (22 Ill. 2d 432, 442, 176 N.E.2d 761, 766.)

The supreme court's comment was made in the context of discussing the defendant's business purpose of profiting from its sales made in Illinois and other States. This was cited as an indication that the defendant was invoking the benefits of Illinois law which permitted the sale of appliances incorporating its valves. As a matter of fairness, then, the contemplation or foreseeability test is but one factor to consider in the minimum contact analysis. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 560.) Indeed, the United States Supreme Court recently stated that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," and that the important aspect of foreseeability is that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." (444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 560, 567.) It is doubtful that Green, Sr., a Texas resident who has not visited Illinois since 1975, would anticipate that litigation arising from his Texas business activities would subject him to an Illinois court's jurisdiction.

In a proper case, existence of a conspiracy between defendants may result in the exercise of jurisdiction over a nonresident co-conspirator. However, we do not believe this is such a case. The mere commonality of interests between the father and son does not necessarily make them co-conspirators for purposes of imputing jurisdiction over Green, Sr., based on his son's contacts with Illinois. Although the specific elements of conspiracy were not alleged or argued, we assume that the essence of this type of tortious act would be an agreement to divert money from the corporate coffers of Advance Ross through Green, Jr.'s payment of $26,751 to his father and through the use of personnel paid by Electronics

and Steel. This theory fails for the same reasons as do the other ones advanced by counterplaintiffs: all the acts in dispute occurred in Texas. In contrast to the situation in *International Merchandising*, there is no indication of overt acts occurring in Illinois in furtherance of a conspiratorial agreement between the Greens. Thus, because we have placed the occurrence of the alleged financial injury in Texas, there is no sufficient basis for long-arm jurisdiction over Green, Sr., under the conspiracy theory, either.

While there do not appear to be any cases that bear a close factual resemblance to the instant case, we can look for guidance from a decision by the Federal district court for the Northern District of Illinois, which examined the propriety of extending the Illinois long-arm statute to reach nonresident co-conspirators in an antitrust case. In *Chromium Industries, Inc. v. Mirror Polishing & Plating Co.* (N.D. Ill. 1978), 448 F. Supp. 544, 552, the court held that "[c]onspiratorial activities having tortious consequences * * * are not a sufficient basis for jurisdiction in the absence of any other contacts." The court was concerned that nonresident co-conspirators might be subjected to jurisdiction even if they had no *direct* contacts with a forum State. The court stated that "if jurisdiction could be established by merely alleging that a corporate defendant participated in a conspiracy and that one member of the conspiracy committed a tort in the district, antitrust plaintiffs would be able to reach absent co-conspirators with no independent contacts with the forum. We see no basis for engrafting a broad conspiratorial accretion on the scope of the long-arm statutes." We adopt a similar position with respect to the facts of this case.

Because we hold that there are insufficient contacts between Green, Sr., and Illinois to sustain jurisdiction, we conclude that the trial court properly denied leave to join Roy W. Green, Sr., as an additional party counterdefendant to the lawsuit.

Affirmed.

LORENZ and MEJDA, JJ., concur.