CLUB ASSISTANCE PROGRAM, INC., Plaintiff,

v.

Jack J. ZUKERMAN, et al., Defendants.

No. 84 C 1699.

United States District Court, N.D. Illinois, E.D.

Sept. 10, 1984.

Anthony C. Valiulis and Kenneth A. Wexler, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiff.

Anthony J. Pauletto, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On April 27, 1984 Jack Zukerman ("Zukerman"), William Feldstein, Jr. ("Feldstein") and Murray Scheer ("Scheer") moved under Fed.R.Civ.P. ("Rule") 12(b)(2) to dismiss the First Amended Complaint (the "Complaint") of Club Assistance Program, Inc. ("CAP"). Eight days later they moved under Rule 12(b)(3) for change of venue. For the reasons stated in this memorandum opinion and order defendants' Rule 12(b)(3) motion is denied, while their Rule 12(b)(2) motion is granted in part and denied in part.

*Facts* [1]

Defendants are officers and directors of Delaware Genesis, Inc. ("Genesis"),[2] a Los Angeles-based company "in the business of warehousing, marketing, and selling weight control products, diets, food packages, behavior modification programs, and other health related plans and items" (Complaint ¶ 6). On May 27, 1983 Genesis, acting through defendants, entered into an agreement with CAP (the "Contract") for marketing-consultant services to help promote sales of Genesis' products in Illinois. Since that time Genesis has not paid CAP all money due, or delivered any of the Genesis stock to which CAP is entitled, under the Contract. On February 29, 1984 Genesis filed a petition for Chapter 11 bankruptcy reorganization in the Central District of California.

CAP claims defendants are responsible for Genesis' incomplete performance of the Contract because they looted, and generally took unreasonable profits from, Genesis. CAP asserts defendants acted against it specifically in an effort to hide their wrongdoing by deliberately misinterpreting the Contract, then lulling CAP into a false sense of security by misrepresenting to CAP that Genesis would be able to pay its debts. Those misrepresentations were effectuated by two telephone calls (one on November 11 and the other on December 23, 1983) between Zukerman in California and CAP principal Alan Schwartz ("Schwartz") in Illinois,[3] with the knowledge and approval of Feldstein and Scheer. Defendants' conduct is assertedly actionable as (1) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Count I), (2) tortious interference with the Contract (Count II), (3) fraud (Count III), (4) breach of fiduciary duties to Genesis' stockholders (Count IV) and (5) breach of the Contract by Genesis as defendants' alter ego (Count V).

*Venue*

Defendants did not move for change of venue under Rule 12(b)(3)[4] until eight days after they had moved (in lieu of a responsive pleading) to dismiss under Rule 12(b)(2) for want of personal jurisdiction. Their Rule 12(b)(3) position is therefore waived.

Rule 12(h)(1) provides in relevant part:

A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived

(A) if omitted from a motion [made in lieu of a responsive pleading] in the circumstances described in subdivision (g) [which provides for consolidation of most defenses in a single motion]. . . .

---

1. Defendants offer some evidence in affidavit form in support of their motion, and CAP too has submitted affidavit evidence. Because no hearing has been requested by which any conflicts in the evidence could be finally resolved, all such conflicts must be resolved in favor of CAP, the non-moving party. See *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir. 1984). Apparently both sides' affidavits are intended to supplement the Complaint, for CAP's evidence does not restate or verify its Complaint and defendants' evidence does not deny the Complaint's allegations. Thus in accordance with principles governing motions to dismiss the Complaint's allegations are assumed to be true and are read in the light most favorable to CAP. See *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

2. Genesis was also named as a defendant in the original complaint but was then dropped from the First Amended Complaint.

3. Schwartz Aff. ¶¶ 8 and 9 do not indicate who placed the calls. Given their context (Genesis owed CAP substantial commission payments) it seems more likely they would have originated as concerned calls by Schwartz, with Zukerman lulling him into inaction by his assurances all would be well if CAP were patient. That assumption was also made in defendants' scanty memorandum (Mem. 2) and accompanying affidavit. However under the principle of n. 1 the opposite will be assumed (in case it makes a difference in result): calls from Zukerman to Schwartz.

4. Were defendants correct as to their improper-venue contention, 28 U.S.C. § 1406(a) would permit this Court either to dismiss this action or to transfer it to California.

Rule 12(h)(1) had been amended to that form in 1966 to eliminate a previously-existing ambiguity. Notes of Advisory Committee on Rule 12(h), 1966 Amendment, state:

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived.... A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

\*　　\*　　\*　　\*　　\*　　\*

Since the language of the subdivision is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver.

Defendants' R. Mem. 2 "responds" to CAP's waiver argument in one short conclusory paragraph:

The First Amended Complaint was filed on April 20, 1984. Within the time allowed by this Court, the Defendants filed both a Motion to Dismiss and a Motion to Transfer Venue. The claim by the Plaintiff that the Venue motion was waived is without merit.

Defendants have offered no support for the idea that successive pre-answer motions may form a permissible exception to Rule 12(h)(1) just because they are all filed within the time allowed defendants to answer or otherwise plead. Nor have defendants offered any explanation for their failure to consolidate their motions in the face of Rule 12(h)(1)'s clear language. Their motion for a Rule 12(b)(3) change of venue is denied.

All the same, this action's at-best-tenuous hold on Illinois indicates both (1) the substantial likelihood a timely Rule 12(b)(3) motion would have been granted and (2) perhaps more important, the considerations identified in 28 U.S.C. § 1404(a) ("Section 1404(a)") appear to point to a California situs for the litigation. Accordingly this Rule 12(b)(3) denial is without prejudice to defendants' assertion of a Section 1404(a) motion. In the meantime, in the interests of judicial economy this Court will deal with defendants' Rule 12(b)(2) motion—thus avoiding the delays that would be occasioned if a transferee court had to familiarize itself with the issues and applicable law.[5]

*Personal Jurisdiction*

Federal courts sitting in Illinois must begin their analysis of personal jurisdiction with the question whether Illinois' long-arm statute, Ill.Rev.Stat. ch. 110, ¶ 2–209 ("Section 2–209") authorizes service of process on defendants. Its statutory limitations are not significantly different from those imposed by the federal Constitution, though in *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981) the Illinois Supreme Court issued its declaration of independence from any ongoing federal expansion of the Due Process Clause. What that means is that the reach of Section 2–209 may lie within or may touch, but cannot extend outside, the fence marked out by due process requirements as defined in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. See *Felicia, Ltd. v. Gulf American Barge, Ltd.*, 555 F.Supp. 801, 804 (N.D.Ill.1983).

Section 2–209(c) provides plaintiffs can invoke defendants' contacts with Illinois only to the extent plaintiffs' causes of ac-

---

**5.** One important caveat is in order. All the discussion of substantive law in this opinion has assumed the applicability of Illinois law (the parties have not addressed the substantive law issues or, within that, the choice of law considerations). If this action were to be transferred, the transferee court would be free to decide that California law applied and therefore to take a fresh look at matters. Of course, in the event of a transfer the bulk of the discussion in this opinion—that dealing with jurisdiction over defendants' persons—would no longer be relevant at all.

tion "arise from" those contacts. Courts agree a cause of action that does not "arise from" defendants' contacts with Illinois cannot be tried in Illinois on the theory it is pendent to another cause of action that does "arise from" defendants' contacts with Illinois. Rather, each cause of action must be supported by sufficient contacts. See *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.,* 66 Ill.App.3d 789, 800, 23 Ill.Dec. 352, 360, 383 N.E.2d 1379, 1387 (1st Dist.1978).[6]

Thus it is necessary to do what neither side has done: examine each of CAP's theories of recovery to see whether they arise from sufficient Illinois contacts by defendants. To promote analytical clarity, Complaint Counts II and III will be considered before returning to Count I.

*Counts II and III*

Count II (tortious interference with economic relations) and Count III (fraud) are both traditional state law tort claims. Without stating to just which counts it intends its arguments to apply, CAP asserts defendants have both (1) transacted business in Illinois (Section 2–209(a)(1)) and (2) committed tortious acts in Illinois (Section 2–209(a)(2)).

 CAP's transaction-of-business contention cannot prevail as to Counts II and III. CAP claims defendants transact-

ed business in Illinois when they visited the Chicago area to negotiate the Contract. But defendants themselves did not transact business for purposes of those counts. Instead they came to Illinois only to transact business for Genesis. Under Illinois law defendants cannot be haled into court in Illinois on the basis of acts committed here solely as fiduciaries of their corporation. *Hurletron Whittier, Inc. v. Barda,* 82 Ill. App.3d 443, 447, 37 Ill.Dec. 838, 841, 402 N.E.2d 840, 843 (1st Dist.1980); *Mergenthaler,* 66 Ill.App.3d at 797, 23 Ill.Dec. at 358, 383 N.E.2d at 1385. Thus Counts II and III did not arise from any transaction of Illinois business by defendants.

 Defendants did, however, commit tortious acts in Illinois from which Counts II and III may be said to have arisen. As alleged in the Complaint, those acts were undertaken on defendants' own behalf in such a way as to impose personal liability on themselves. In such circumstances defendants cannot invoke Illinois' "fiduciary shield," because their actions were not taken only on their corporation's behalf. While Illinois cases have not articulated that precise legal proposition, *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis.2d 683, 692–93, 273 N.W.2d 285, 289 (1979) illustrates the point.[7]

Commission of a tortious act in Illinois does not require defendants' physical pres-

---

**6.** One case, *Bodine's, Inc. v. Sunny-O, Inc.,* 494 F.Supp. 1279, 1284–85 (N.D.Ill.1980), appears to hold to the contrary. However that case is suspect to the extent it places inappropriate reliance on *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) where the question is the reach of the state jurisdictional statute—purely a matter of state law. Hence it would be better to interpret *Bodine's* as holding that both its tort claim and its purportedly "pendent" contract claims "arose from" defendant's commission of a tortious act in Illinois.

**7.** Dictum in *Columbia Briargate Co. v. First National Bank,* 713 F.2d 1052, 1059 (4th Cir.1983) suggests the so-called "fiduciary shield" doctrine (exemplified in Illinois by *Hurletron* and *Mergenthaler,* though not under that label) generally permits corporate principals like defendants here to hide behind the corporate entity even when they have, in the forum state, committed

tortious acts on their own behalf (or not for the corporation's benefit) for which they must take personal responsibility. But *Columbia Briargate* draws too much mileage from the statement in *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981) (applying New York law) that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." To this Court's knowledge no case (including *Marine Midland* itself and this Court's own opinion in *State Security Insurance Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94 (N.D.Ill. 1981)) has stretched the "fiduciary shield" doctrine as far as *Columbia Briargate* claims *Marine Midland* extended it. Defendants here lowered their "fiduciary shield" if they committed acts in Illinois not strictly as Genesis fiduciaries but for their own benefit, such that they can be held personally liable.

ence here. Section 2–209(a)(2)'s general rule is that a tortious act occurs where the last event necessary to create liability occurs—usually where the plaintiff's injury occurs. Because CAP's alleged injury was to its pocketbook and that pocketbook is located in Illinois where it resides, under basic long-arm jurisdiction principles it could be said the torts alleged in Counts II and III were committed in Illinois. See, e.g., *Bodine's,* 494 F.Supp. at 1282.

Since the decision in *Bodine's,* with its conventional approach to determining the location of tortious acts producing economic harm, the Illinois Supreme Court in *Green* has declared a limitation on the general rule that a tort occurs where its harm is felt. *Green,* 86 Ill.2d at 438–40, 56 Ill. Dec. at 661–62, 427 N.E.2d at 1207–08 held if the *only* relevant Illinois fact were that "the consequences of [defendant's] misconduct were felt in Illinois" (*id.* at 438, 56 Ill.Dec. at 661, 427 N.E.2d at 1207), defendant's tortious act cannot be considered to have been committed in Illinois. There the defendant's alleged wasting of the assets of the plaintiff corporation in Texas was not sufficient to constitute submission to Illinois jurisdiction because the only Illinois contacts were (1) the plaintiff's incorporation in Illinois and (2) the headquartering of plaintiff's parent corporation here.

With *Green*'s arrival on the personal jurisdiction scene, CAP must allege and later prove not only economic injury occurring in Illinois, but also some tortious acts by defendants (or their agents) actually taking place in Illinois. Two alleged actions by defendants might fill that bill:

1. Defendants interfered with the Contract by deliberately misinterpreting it and sending CAP (in Illinois) less money than was due CAP.

2. Zukerman, acting as an agent of Feldstein and Scheer, had two long distance telephone conversations with Schwartz (then in Illinois) to forestall action by CAP to enforce the Contract before Genesis declared bankruptcy.

Certainly both Count II (tortious interference) and Count III (fraud) "arose from" those acts. As our Court of Appeals recently recapitulated Illinois law in *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587 at 590–591 (7th Cir.1984), Illinois' liberal "arising from" standard requires only that the cause of action "lie in the wake" of defendants' Illinois contacts. Both enumerated contacts are integral to both Counts II and III, so the relationship between the contacts and the causes of action is more than sufficient under Illinois law.

That however is only a prelude to the more difficult question: whether in light of *Green* those contacts constitute tortious acts "within Illinois." Pre-*Green* case law clearly would permit assertion of personal jurisdiction over defendants on the theory the tortious acts occurred "within Illinois." Mailing (or causing mailing of) money or messages to Illinois, coupled with defendant's intent to affect Illinois interests,[8] has consistently been held to satisfy

---

8. "Intent to affect Illinois interests" is a shorthand phrase employed here to represent an amalgam of considerations sometimes referred to in Illinois cases as "conduct by which [defendants] may be said to have invoked the benefits and protections of the law of the forum." *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 440, 176 N.E.2d 761, 765 (1961). That phraseology is more appropriate in cases such as *Gray,* in which a defendant permitted shipment of its products into Illinois as part of its business. There the defendant may not specifically intend to affect Illinois interests, but can surely reasonably anticipate being sued in Illinois if the products prove defective. By contrast, in any case of intentional wrongdoing it is awkward to refer to a defendant's alleged deliberate violation of Illinois law as "invoking the benefits and protections of Illinois law." However that awkwardness does not make the concept inapplicable. For that reason this opinion simply retains the concept but changes the location. If the Complaint's allegations are true, defendants needed and intended to affect Illinois interests because an important creditor of Genesis (CAP) resided and did business in Illinois. CAP's residence in turn was no accident, for it was critical to the Contract by which Genesis attempted to market its products in Illinois. See *International Merchandising Associates, Inc. v. Lighting Systems, Inc.,* 64 Ill.App.3d 346, 20 Ill.Dec. 838, 380 N.E.2d 1047 (1st Dist.1978). Contrast *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

the requirements of Section 2–209. See, e.g., *AAAA Creative, Inc. v. Sovereign Holidays, Ltd.*, 76 Ill.App.3d 514, 32 Ill. Dec. 119, 395 N.E.2d 66 (1st Dist.1979).[9] Similarly, telephone calls between a plaintiff in Illinois and a defendant in another state satisfy the requirements of Section 2–209 if the defendant intends to affect Illinois interests and intends to communicate his message to Illinois. See, e.g., *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist.1973).[10] In those few reported cases in which both those factors are present—a defendant's mailing of money or messages into Illinois and also his or its telephone communication to plaintiff in Illinois—the outcome continues to turn on whether defendant intended to affect plaintiff's Illinois interests. See, e.g., *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1st Dist.1974).[11]

It is doubtful *Green* was intended to override the approach used by all the cases cited in the preceding paragraph and its footnotes. All *Green* really did was to lay to rest a hasty generalization that might be drawn from those cases: that an injury occurring in Illinois, coupled with an allegation of intentional wrongdoing, would *always* suffice to confer personal jurisdiction on Illinois courts. Thus the simplistic (though straightforward) analysis of *Bodine's*, 494 F.Supp. at 1282 is no longer with us.[12] But *Green* offered no hint the combination of contacts present here, when coupled with an intent to affect Illinois interests, should now become insufficient for jurisdiction. In interpreting the present state of Illinois law, this Court will not assume the rejection of so many prior cases without a clear indication from Illinois courts to that effect.[13]

**9.** This Court generally eschews string citations because of its inflexible rule—impressed on each of its law clerks—that it reads every case cited in each of its opinions. In this instance however the statement in the text is not generally articulated in that form as a rule of Illinois law, but rather becomes apparent only on examination of the following cases in addition to *AAAA Creative: Sears Bank & Trust Co. v. Luckman*, 61 Ill.App.3d 260, 18 Ill.Dec. 520, 377 N.E.2d 1156 (1st Dist.1978) (no intent to affect Illinois; no personal jurisdiction); *Citizens Bank & Trust Co. v. Pittman*, 52 Ill.App.3d 137, 9 Ill.Dec. 831, 367 N.E.2d 265 (1st Dist.1977) (intent to affect Illinois; personal jurisdiction); *First Professional Leasing Co. v. Rappold*, 23 Ill.App.3d 420, 319 N.E.2d 324 (4th Dist.1974) (intent to affect Illinois; personal jurisdiction); *Telco Leasing, Inc. v. Marshall County Hospital*, 586 F.2d 49 (7th Cir.1978) (no intent to affect Illinois; no personal jurisdiction); *Payne v. AHFI Netherlands, B.V.*, 482 F.Supp. 1158, 1160–61 (N.D.Ill.1980) (intent to affect Illinois by Telex; personal jurisdiction); *Jack O'Donnell Chevrolet, Inc. v. Shankles*, 276 F.Supp. 998 (N.D.Ill.1967) (personal jurisdiction in count alleging intent to affect Illinois; no personal jurisdiction in counts not alleging intent to affect Illinois). Thus this Court's law clerk, Tom Shreve, will be pardoned this one time. More seriously, credit for all of the input for the analysis in this opinion belongs to him rather than to the litigants—though as always any blame for the end conclusions, of course, rests on this Court.

**10.** As in n. 9, the statement in the text becomes apparent only on examination of the following

cases in addition to *Cook Associates: Central Clearing, Inc. v. Omega Industries*, 42 Ill.App.3d 1025, 1 Ill.Dec. 570, 356 N.E.2d 852 (1st Dist. 1976) (no intent to affect Illinois; no personal jurisdiction); *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir.1976) (no intent to communicate to Illinois; no personal jurisdiction); *Royal Globe Insurance Co. v. Logicon, Inc.*, 487 F.Supp. 1245 (N.D.Ill.1980) (no intent to affect Illinois; no personal jurisdiction); *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001 (N.D.Ill.1973) (intent to affect Illinois; personal jurisdiction).

**11.** See also *Woodfield Ford, Inc. v. Akins Ford Corp.*, 77 Ill.App.3d 343, 32 Ill.Dec. 750, 395 N.E.2d 1131 (1st Dist.1979) (no intent to affect Illinois; no personal jurisdiction); *Chicago Film Enterprises v. Jablanow*, 55 Ill.App.3d 739, 13 Ill.Dec. 466, 371 N.E.2d 161 (1st Dist.1977) (no intent to affect Illinois; no personal jurisdiction); *Artoe v. Mann*, 36 Ill.App.3d 204, 343 N.E.2d 647 (1st Dist.1976) (no intent to affect Illinois; no personal jurisdiction).

**12.** Ironically *Green*, 86 Ill.2d at 439, 56 Ill.Dec. at 661, 427 N.E.2d at 1207 cited *Bodine's* with approval for another proposition, that economic injury cannot be distinguished from physical injury.

**13.** One added indication *Green* did not intend to depart substantially from prior Illinois law was its stated partial reliance (86 Ill.2d at 438, 56 Ill.Dec. at 661, 427 N.E.2d at 1207) on the narrow ground that "[t]he situs of the last event whose happening was necessary to hold [de-

■ Of course, in addition to satisfying Section 2–209, invocation of personal jurisdiction over defendants must not offend due process. Defendants allegedly reached out to make improper payments and fraudulent misrepresentations to CAP in Illinois.[14] Such a deliberate decision to affect Illinois interests weighs heavily in favor of permitting Illinois to exercise personal jurisdiction. See, e.g., *Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). Because of that decision defendants can "reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Defendants' Rule 12(b)(2) motion must therefore be denied as to Counts II and III. This opinion turns then to Count I.

*Count I*

■ Count I claims defendants are liable to CAP under RICO.[15] Count I ¶ 20 alleges defendants conducted a pattern of racketeering activity by perpetrating as predicate acts the same fraud later alleged in Count III (already discussed). Count I ¶¶ 21–24 allege that through that pattern of racketeering activity defendants violated each of the four subsections of 18 U.S.C. § 1962 ("Section 1962").

For purposes of Section 2–209, Count I alleges four separate causes of action. RICO does not make commission of predicate acts unlawful; it makes violation of any subsection of Section 1962 unlawful. Because an act breaching any one of those four subsections renders defendants liable, Complaint Count I ¶¶ 21–24 assert four separate routes by which CAP may establish its entitlement to recovery. Under Illinois law CAP cannot recover here on any cause of action just because it is pendent to one on which CAP can assert personal jurisdiction over defendants (see n. 7 and accompanying text). Accordingly each basis for RICO liability must separately be shown to "arise from" defendants' Illinois causes of action.

■ Section 1962(a) (which Count I ¶ 21 alleges defendants have violated) prohibits using income derived from racketeering activity in operating a business. CAP does not allege (nor apparently could it) that defendants used any proceeds of their fraud to operate Genesis *in Illinois.* Apparently defendants violated Section 1962(a) by using their fraudulent activity in Illinois to prolong their ability to operate Genesis in California. That California operation, while unlawful under Section 1962(a) as CAP describes it, arises solely from the California activity of using racketeering proceeds to operate Genesis. It does not "arise from" either defendants' or Genesis' Illinois contacts. Thus Count I

---

fendant] liable was in Texas." In this case, as in those cited in the preceding paragraph and its footnotes, the situs of the last event necessary to hold defendants liable was in Illinois.

**14.** It should be emphasized this Court has assumed not only the truth of CAP's allegations (see n. 1) but also the substantive adequacy of the facts alleged in Counts II and III as stating tort causes of action. In that respect it may seem anomalous to permit CAP to pursue a cause of action against Genesis' principals for tortious interference with a contract between CAP and Genesis itself. Because corporations act only through their agents, such a cause of action would be akin to suing a person for tortious interference with his own contract, an approach this Court found in *DP Service, Inc. v. AM International, Inc.,* 508 F.Supp. 162, 167–68 (N.D.Ill.1981) to be impermissible under Illinois law. However where a corporation's principals

act "without justification or maliciously" in a manner beyond the scope of proper business judgment, Illinois law permits them to be held liable for tortious interference with their corporation's contracts. *Swager v. Couri,* 77 Ill.2d 173, 190, 32 Ill.Dec. 540, 546, 395 N.E.2d 921, 927 (1979) (citation omitted). See also *Knorr Brake Corp. v. Harbil, Inc.,* 550 F.Supp. 476, 480 (N.D.Ill.1982).

**15.** Whatever may be the appropriate forum for trying CAP's RICO claim, it cannot recover for injuries alleged in Complaint Count I ¶ 25(c) to the value of its Genesis stock. As this Court recently held in *Gallagher v. Canon U.S.A., Inc.,* 588 F.Supp. 108 at 110–111 (N.D.Ill.1984), any RICO cause of action for diminution in the value of a corporation belongs to the corporation, not to the corporation's individual stockholders (on the theory their stock has been rendered less valuable).

¶ 21 must be stricken for want of personal jurisdiction over defendants.

Section 1962(b) (which Count I ¶ 22 alleges defendants have violated) prohibits using income derived from racketeering activity to acquire an interest in a business. Again CAP does not allege defendants used any proceeds of their fraud to acquire any interest in an Illinois business. Instead they acquired an interest in Genesis, a California business. And while Genesis transacted some business in Illinois (see the discussion of Count V below), CAP's Section 1962(b) cause of action arose not from that transaction of business by Genesis but from the California transaction by which defendants allegedly acquired an interest in Genesis. Count I ¶ 22 is also stricken for want of personal jurisdiction over defendants.

■ Section 1962(c) (which Count I ¶ 23 alleges defendants have violated) prohibits conducting the business of any entity through a pattern of racketeering activity. In each alleged fraudulent representation, defendants communicated with CAP in their roles as Genesis principals. Thus if defendants indeed engaged in a pattern of racketeering activity in Illinois, the reasonable inference is they also conducted Genesis' business through a pattern of racketeering activity in Illinois. This Court can assert personal jurisdiction over defendants to adjudicate CAP's Section 1962(c) theory for the same reasons it can assert personal jurisdiction over defendants to adjudicate Count III. Count I ¶ 23 need not be stricken.

Section 1962(d) (which Count I ¶ 24 alleges defendants have violated) prohibits conspiring to violate Section 1962(a), (b) or (c). As already discussed, any direct violations of Section 1962(a) and (b) necessarily arose from California transactions and occurrences. As for any supposed conspiracy to violate Section 1962(a) or (b), CAP has alleged nothing that would bring charges of such a conspiracy within the power of this Court to decide (remember it has no power to decide whether those subsections were violated directly). But any direct violations

of Section 1962(c) arose at least in part from tortious acts committed in Illinois. *Green,* 82 Ill.2d at 440–41, 56 Ill.Dec. at 662, 427 N.E.2d at 1208 governs personal jurisdiction over conspirators in such a situation:

It is not true that if one conspirator is subject to Illinois jurisdiction so are all the others. Rather, the theory of jurisdiction based on the acts of a co-conspirator must be that co-conspirators are each others' agents; thus the argument would be that when a conspirator commits a tortious act within Illinois he does so as agent for his co-conspirators, who thereby also become subject to this State's jurisdiction.

Inasmuch as defendants have submitted to jurisdiction on Count I by allegedly committing tortious acts within Illinois, they have also submitted to jurisdiction by allegedly conspiring to commit those tortious acts. Thus Count I ¶ 24 need not be stricken if it is narrowed to allege only a conspiracy to violate Section 1962(c), not also a conspiracy to violate Section 1962(a) or (b).

In sum, Count I must be limited as stated in this section and n. 15 of this memorandum opinion and order. As so modified, Count I need not be dismissed for want of personal jurisdiction over the defendants.

*Count IV*

Count IV charges defendants breached their fiduciary duties to Genesis' stockholders, including CAP. Two problems preclude the exercise of personal jurisdiction over defendants for the purpose of adjudicating Count IV.

■ First, any cause of action against defendants for such breach of fiduciary duties does not "arise from" their Illinois activities. True enough if defendants committed torts against CAP in Illinois those actions might also be said to constitute breaches of fiduciary duty. But the substantive wrong for which CAP seeks to recover in Count IV is defendants' alleged wasting of Genesis' assets and unlawful withdrawals of assets for their personal use. Those activities occurred only in Cali-

fornia. Indeed, if CAP's Count III fraud allegations were assumed to be correct,[16] defendants' tortious activities against CAP in Illinois actually helped Genesis by sustaining it longer than it otherwise could have survived.

Count IV actually arises from the stockholder/director relationship between CAP and defendants. If CAP can sue defendants for breach of fiduciary duty, its right is identical to that of every stockholder other than defendants themselves. No fact links that relationship to Illinois except the Illinois base of CAP, a stockholder. Under *Green*'s interpretation of Section 2-209(a)(2), defendants cannot be considered to have committed a tortious act in Illinois simply because they have breached duties to an Illinois corporation. Moreover *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) rejected the idea that corporate rights alone can justify assertion of jurisdiction by a particular forum through some legal fiction that those rights are located in that forum.

█ Second, *Zeunert v. Quail Ridge Partnership*, 102 Ill.App.3d 603, 608, 58 Ill.Dec. 242, 245, 430 N.E.2d 184, 187 (1st Dist.1981) (citation omitted) teaches causes of action must be minimally viable before they may justify assertion of personal jurisdiction:

> When a defendant challenges jurisdiction, a court will make a preliminary inquiry as to whether the complaint states a legitimate cause of action "to insure that acts or omissions which form the basis of a cause of action that is

patently without merit will not serve to confer jurisdiction."

To the extent Count IV belongs to all Genesis stockholders it really belongs to Genesis itself. It cannot then be brought except as a derivative action or by Genesis alone. See, e.g., *Poliquin v. Sapp*, 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (4th Dist.1979).

Because Count IV represents a cause of action belonging to Genesis, it is really property of Genesis' bankrupt estate. Any attempt by CAP to obtain rights over it in this Court would undoubtedly violate the Bankruptcy Code's automatic stay, 11 U.S.C. § 362.[17]

For both reasons stated in this section, defendants' Rule 12(b)(2) motion is granted with respect to Count IV. That is the first full count to sustain dismissal.

*Count V*

Count V alleges the Contract was actually between CAP and defendants, not just between CAP and Genesis, because Genesis was merely an "alter ego" of defendants. With Genesis now in breach of the Contract, CAP seeks to "pierce the veil" and obtain the benefit of its bargain directly from defendants.

If Genesis and defendants are indeed one and the same for purposes of Count V, Illinois activities by Genesis (including activities by defendants on Genesis' behalf) could be considered in determining the propriety of asserting jurisdiction. See *Marine Midland*, 664 F.2d at 903–04 (applying New York law).[18] Count V is an action for breach of contract, and the Contract arises

---

**16.** In light of the permissibility of inconsistent pleading, of course, Count III's allegations need not be carried over into Count IV. But Count IV itself gives no hint of Illinois-based activities.

**17.** Genesis' bankruptcy may affect the propriety of other counts as well, although it has not rendered those other counts "patently without merit."

**18.** *Marine Midland* distinguished, for personal jurisdiction purposes, between "piercing the corporate veil" and a lesser showing that the corporation was merely a shell. That distinction is not relevant to this case. In any event defendants' present motion is not in the same proce-

dural posture as the motion in *Marine Midland*. Here defendants take the position the Complaint does not allege facts sufficient to justify the assertion of jurisdiction against them. Under the circumstances of *Marine Midland* it was appropriate to hold a hearing to ascertain whether personal jurisdiction could rest on the existence of a shell corporation. If such a hearing were held in this Court, CAP would be required to prove piercing the veil is warranted so that jurisdiction exists. See *Mergenthaler*, 66 Ill.App.3d at 797, 23 Ill.Dec. at 358, 383 N.E.2d at 1385.

from Genesis' contacts with Illinois before May 27, 1983, during which the Contract was negotiated.

As our Court of Appeals said in *Jacobs/Kahan*, at 590 (quoting *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 396 (N.D. Ill.1982)), if negotiation and later execution of a contract in Illinois "is not the transaction of business in Illinois, it is difficult to know what is." Here it appears from the evidence the contract was negotiated in Illinois and signed by CAP here, but then "executed" in California (that is, the final signature was affixed there). *United Air Lines, Inc. v. Conductron Corp.*, 69 Ill. App.3d 847, 853–55, 26 Ill.Dec. 344, 348–49, 387 N.E.2d 1272, 1276–77 (1st Dist.1979) teaches such formal "execution" is not sufficient to change the result mandated by *Jacobs/Kahan* when all other events pertaining to the contract's formation occurred in Illinois. Moreover *International Merchandising* teaches Genesis' contract to market its products in Illinois itself constitutes the transaction of business in Illinois, regardless of where the contract was formed.

But even though this Court assumes the Complaint's allegations are true (see n. 1), it cannot assume piercing the corporate veil is appropriate. *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill.App.3d 23, 27, 20 Ill.Dec. 230, 233, 379 N.E.2d 1298, 1301 (1st Dist.1978) (citations omitted) states the preconditions to "piercing the corporate veil" under Illinois law:

> For the doctrine traditionally known as "piercing the corporate veil" to apply, two requirements must be met—(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

Count V ¶ 21 alleges the latter condition is present, but no allegation of the first listed condition appears. Count V ¶ 20's conclu-

sory allegation Genesis is defendants' "alter ego" is not sufficient. Even the Rules' notice pleading requires the allegation of facts, not mere legal conclusions.

 Count V need not be dismissed with prejudice. Facts justifying piercing the corporate veil might well be alleged and later proved. However as now alleged Count V does not state a legitimate cause of action. Under the principles of *Zeunert*, 102 Ill.App.3d at 608, 58 Ill.Dec. at 245, 430 N.E.2d at 187, this Court cannot rest assertion of personal jurisdiction on that count. Count V is dismissed without prejudice.

### Conclusion

Despite the dismissal or modification of some counts, this litigation is still very much alive. Now that the legal analysis is through it is appropriate to ask whether that result is just. Fundamentally CAP complains of defendants' alleged looting of Genesis. If any such looting occurred it undeniably took place in California. Any business person—indeed anyone other than lawyers trained in spinning out the legal fictions that dominate so much of legal "reasoning"—would unquestionably view this as a California case. Defendants' asserted Illinois contacts allegedly resulted only from their desire to preserve the ill-gotten gains they had already appropriated. And if in fact defendants did not loot Genesis, but only presided over a failed business, it is even more anomalous they would have to defend this action in Illinois.

This case is an object lesson in how to lasso defendants into defending a lawsuit in plaintiff's home state. As the discussion of Counts II and III indicates, allegations of intentional misconduct are critical when the propriety of asserting personal jurisdiction is in question. And if a plaintiff keeps in close contact with prospective defendants by telephone and mail, those defendants are likely to respond in such a manner that they inadvertently submit to jurisdiction in plaintiff's state.[19] If the result in

---

**19.** In this case defendants' lawyering may be to blame to an extent for the appearance that de-

fendants submitted to jurisdiction by calling CAP in Illinois. See n. 3.

this case is easier on CAP than it should be, perhaps that is because constitutional principles give too much deference to efforts by state courts to vindicate "their" interests.

But this is not the time to make a constitutional stand. For this Court could reach a different result it would have to explain away a considerable array of contrary authority (see nn. 9–11 and accompanying text). Both *Erie v. Tompkins* and the limited restraints on jurisdiction imposed by *International Shoe* and its progeny foreclose such creativeness.

All this may prove an idle exercise. Section 1404(a) is still available to defendants.[20] It appears most likely defendants will actually not have to defend this litigation in Illinois—that Delaware Genesis will become Delaware Exodus.[21]

That however is for the future. For the present:

1. Defendants' Rule 12(b)(3) motion is denied as waived.

2. Pursuant to Rule 12(b)(2) Count I ¶¶ 21, 22 and 25(c) are stricken, while Count I ¶ 24 is not stricken on the understanding it alleges defendants' conspiracy only to violate Section 1962(c).

3. Count IV is dismissed with prejudice.

4. Count V is dismissed without prejudice.

5. In all other respects defendants' Rule 12(b)(2) motion is denied.

20. While this opinion was in the process of completion, defendants noticed up a Section 1404(a) motion supported by an affidavit. That will be the next procedural hurdle to be faced before any attention is paid to the merits of the dispute.

21. Litigants would do well to ponder whether the game is worth the candle. This action is over six months old. Thousands of dollars have been spent (wasted?) on lawyers' fees to maintain an Illinois toehold on what is plainly, in common-sense terms, a California lawsuit. Added months and thousands more in fees may be spent on a Section 1404(a) motion. None of the time and effort has advanced inquiry into the substance of the parties' dispute at all. Had

this action been brought in California, where it is likely to wind up anyway, all the time and money could have been invested constructively (it is inappropriate to say "more constructively," for there is nothing constructive about procedural skirmishes). Indeed even if the Section 1404(a) motion is unsuccessful and the case stays here, the motions challenging jurisdiction and venue—and the consequent expenditure of time and money—were predictable if not inevitable. And most of the discovery and other work will have to be done in California in all events. Any objective observer would have to ask about the decision to sue here: What has been traded off for what, and can any potential benefit possibly justify the cost?