Daniel McILWEE, Plaintiff–Appellant,

v.

ADM INDUSTRIES, INC., a foreign corporation, William Anderson, individually and as an officer of Solar Hardware, and Wayne Anderson and Clifton Tucker, individually and as officers of ADM Industries, Inc., Defendants–Appellees.

No. 93–1674.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1993.

Decided Feb. 24, 1994.

Gregory P. Sujack (argued) and David F. Buysse, Garofalo, Hanson, Schreiber & Vandlik, Chicago, IL, for plaintiff-appellant.

Fern Bomchill and Ira J. Belcove (argued), Mayer, Brown & Platt, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Circuit Judge, CUMMINGS, Circuit Judge, and CRABB, Chief District Judge.*

CRABB, Chief District Judge.

Daniel McIlwee sold his 60,780 shares in ADM Industries, Inc., for $4.00 a share and learned much later that William Anderson, Wayne Anderson, and Clifton Tucker had received a higher price of $8.00 a share. McIlwee brought this suit against ADM, Solar Hardware, and the individual defendants, contending that he would not have sold his shares for $4.00 had he known of the higher price paid for the other shares.[1] He sued in federal district court in Illinois, although none of the defendants was a resident of Illinois or found therein, contending that the

---

\* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

1. Although Solar Hardware was not named in the caption, the district court treated Solar Hardware as if it had been named as a defendant, noting that there was some ambiguity whether Solar Hardware was a party to the lawsuit.

court had personal jurisdiction over the defendants because the individual defendants had committed tortious acts in Illinois by failing to disclose the price differential to McIlwee in telephone conversations they had with him when he was in Illinois. The district court dismissed the complaint against the individual defendants for lack of personal jurisdiction and McIlwee appealed. The district court also dismissed the complaint against ADM Industries and Solar Hardware because these defendants were never served properly, but McIlwee does not appeal that dismissal. We affirm the district court's dismissal of the individual defendants.

The district court found the facts relevant to the issue of personal jurisdiction from the complaint, McIlwee's affidavit, and uncontroverted averments in defendants' affidavits. *See Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). The parties do not contest the findings. In summary, they are as follows. In 1982, Enamel Products and Plating Company purchased ADM Industries' stock and other assets. Wayne Anderson and Clifton Tucker were officers and directors of ADM Industries, Inc., an Indiana corporation with its principal place of business in Indiana, and William Anderson was an officer of Solar Hardware, a Mississippi corporation wholly owned by ADM. Wayne Anderson and Tucker are Mississippi residents and William Anderson resides in Florida. (The district court did not find expressly that the individual defendants did not have other residences in Illinois but their affidavits establish that they did not.) McIlwee, a citizen of Illinois, owned 60,780 shares of ADM. He received a proxy statement and a notice of a shareholder meeting at which the sale of ADM to Enamel Products was to be addressed. At the meeting, the shareholders voted to approve the sale and to sell their shares for $4.00 a share. McIlwee voted in favor of the sale and sold his stock at the offered price.

In 1989, McIlwee learned that the individual defendants had received the equivalent of $8.00 a share from Enamel Products because they were paid additional sums known as "earn share." The amount of the earn share payments was based on the number of shares owned by each defendant. McIlwee alleged that had this fact been disclosed to him, he would not have sold his stock for $4.00 a share. He claimed damages in the amount of $243,120.00 plus interest.

During the pendency of the 1982 sale, McIlwee had conducted business with ADM subsidiaries. McIlwee discussed business matters and the stock sale with the individual defendants over the telephone during calls placed by McIlwee and by defendants. At no time did defendants divulge that they would be receiving more for their shares than McIlwee had been offered.

## OPINION

We review de novo the district court's legal conclusion that personal jurisdiction does not lie over the individual defendants in Illinois. *Reed v. International Union of Auto., Aerospace, & Agric. Implement Workers, Local Union No. 663*, 945 F.2d 198, 201 (7th Cir.1991). A federal district court sitting in diversity in Illinois has jurisdiction over a non-resident, non-consenting defendant if an Illinois state court would have jurisdiction over that party. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). The burden of demonstrating the existence of jurisdiction rests on the plaintiff. *Nelson*, 717 F.2d at 1123.

The threshold step in the inquiry is to determine whether plaintiff has alleged that defendants committed one of the acts enumerated in the state's long-arm statute. *FMC Corp.*, 892 F.2d at 1310. Both on appeal and below, McIlwee has based his contention that Illinois courts have jurisdiction over the defendants on the "tortious act" provision of the Illinois long-arm statute, 735 ILCS 5/2–209(a)(2) (formerly Ill.Rev.Stat. ch. 110, § 2–209(a)(2)). This provision states in relevant part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, ... to the jurisdiction of the courts of this State as to any cause of

action arising from the doing of any such acts:

. . . .

(2) The commission of a tortious act within this State.

Illinois courts have held that to establish that a defendant committed a tortious act in Illinois,

the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature. Alternatively, the requirements of the tortious act provision ... may be met if plaintiff demonstrates an economic injury in Illinois coupled with activity indicating an intent to affect Illinois interests.

*Arthur Young & Co. v. Bremer*, 197 Ill. App.3d 30, 36, 143 Ill.Dec. 736, 741, 554 N.E.2d 671, 676 (1st Dist.1990) (citations omitted). It is well established that fraudulent "mailings or telephone calls into Illinois by a non-resident, when coupled with an intent to affect Illinois interests, are a sufficient basis for jurisdiction" under the tortious acts provision of the long-arm statute. *FMC Corp.*, 892 F.2d at 1313; *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir.1990); *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 346–47 (N.D.Ill. 1984).

▮ The question in this case is whether it is sufficient for jurisdictional purposes merely to allege that during telephone conversations directed at Illinois, defendants failed to disclose information they had a duty to disclose. We conclude that more is required: plaintiff must allege facts showing an intent to affect Illinois interests.

McIlwee alleges that the Andersons and Tucker had a fiduciary duty to disclose the earn share payments, that they failed to do so during telephone conversations they had with McIlwee, and that their failure caused McIlwee a financial loss. McIlwee maintains that this is enough to establish that the allegedly fraudulent concealment was a tort committed in Illinois within the meaning of the tortious act provision because it demonstrates that during communications directed

at Illinois defendants were afforded an opportunity to disclose information they had an obligation to disclose. McIlwee's "opportunity to disclose" theory of jurisdiction proves too much. Defendants had the opportunity to disclose at all times, not just during telephone conversations with McIlwee. If defendants were withholding information while they were on the phone with McIlwee, they were *always* withholding information. Nothing stopped them at any time from using any method of communication to divulge the earn share program to ADM shareholders.

If McIlwee is correct that the existence of an opportunity to disclose is dispositive, personal jurisdiction would lie in Illinois regardless whether defendants had any connection with the state as long as defendants breached a duty to disclose and an Illinois resident suffered a financial injury. That McIlwee cannot be correct is clear from the Illinois Supreme Court's explicit rejection of the contention that the tortious act provision of the long-arm statute applies to non-resident defendants whose only contact with Illinois is allegedly causing economic harm within the state. *Club Assistance Program, Inc.*, 594 F.Supp. at 346–47 (discussing *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 438–40, 56 Ill.Dec. 657, 661, 427 N.E.2d 1203, 1207 (1981)); *see also Heritage House Restaurants*, 906 F.2d at 282; *FMC Corp.*, 892 F.2d at 1312; *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 570–71 (7th Cir.1986).

The Illinois courts require a showing that the sending of fraudulent communications into Illinois is coupled with "an intent to affect Illinois interests." *Club Assistance Program*, 594 F.Supp. at 346–47 (collecting cases). If McIlwee's stock ownership constituted an "Illinois interest," an Illinois court might have jurisdiction over Tucker and the Andersons if plaintiff alleged facts showing that defendants had placed telephone calls to McIlwee for the purpose of lulling McIlwee into believing that there was no reason for him not to sell his stock at $4.00 a share or of otherwise furthering their fraudulent scheme to induce him to sell his stock at that price. *See Heritage House Restaurants*, 906 F.2d at 282; *FMC Corp.*, 892 F.2d at 1313. Instead, McIlwee averred only that he and defendants

"discuss[ed] business matters and the sale" over the telephone. Even liberally construed, McIlwee's allegations and averments do not support an inference that defendants harbored a fraudulent intent in withholding information from McIlwee during those discussions.

In response to a hypothetical question posed at oral argument, McIlwee's counsel conceded that it would be "a stretch" to assert jurisdiction in Illinois over the individual defendants on the basis of a call placed to plaintiff in Illinois in which defendants' only utterance was to ask the time. The bare allegation that the stock sale was "discussed" does not make the assertion of jurisdiction any less of a stretch. The record is devoid of any indication that the conversations regarding the sale were more substantive than an exchange about the time. The district court did not err in holding that the complaint and affidavits before it were too sparse to support the inference that defendants' telephone discussions with McIlwee were undertaken in order to perpetuate a fraud on an Illinois resident.

Because we reach this conclusion, we need not consider whether McIlwee's alleged economic loss constitutes an injury within the meaning of the long-arm statute, whether defendants' alleged scheme involved Illinois interests, whether the individual defendants had a duty to disclose information to plaintiff about the price they were paid for their stock, or whether the Illinois fiduciary shield doctrine would preclude a finding of personal jurisdiction over defendants. The decision of the district court is

AFFIRMED.