35 F.3d 568
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
HEALTH CARE SERVICE CORPORATION, d/b/a Blue Cross and Blue
Shield of Illinois, Plaintiff-Appellant,
v.
Timothy LACK, Defendant-Appellee.
 No. 93-1564.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 1, 1994.*
Decided Sept. 2, 1994.
 
 Before CUMMINGS, BAUER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois ("Blue Corss") disputes the district court's dismissal of its complaint on the ground that the court lacked personal jurisdiction over defendant Timothy Lack, a citizen of Arizona. We affirm.
 
 
 2
 Blue Cross filed suit in Sangamon County, Illinois, alleging that Lack had failed to provide information needed to determine whether Blue Cross had a claim for reimbursement against him pursuant to a group health and welfare insurance benefit plan ("the Plan") organized under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001-1461. The Plan is a contractual agreement entered into by Osco Drug Stores ("Osco") and Blue Cross to provide Osco's employees with health insurance. Lack, an Osco employee in Mesa, Arizona, was a beneficiary of the Plan.
 
 
 3
 In March 1986, Lack required medical treatment due to his involvement in a serious automobile accident in Mesa, Arizona. Blue Cross paid out $16,006.70 for Lack's medical expenses. Although Lack subsequently reached a settlement with the tortfeasor in Arizona, he allegedly refused to reimburse Blue Cross out of the settlement funds as the Plan requires. Blue Cross then filed suit in Sangamon County and Lack removed the case to federal court. 28 U.S.C. Sec. 1441(b). The district court dismissed the cause of action without prejudice because Lack did not have the minimum contacts to Illinois necessary to satisfy the due process requirements of the Illinois long-arm statute. 735 ILCS 5/2-209. We review de novo whether the district court has personal jurisdiction over Lack. McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir.1994). The burden to demonstrate the existence of jurisdiction rests with Blue Cross. Id.
 
 
 4
 The parties agree that whether the district court has personal jurisdiction over Lack in this case is governed by state law. To assert personal jurisdiction over a nonresident defendant, Illinois courts must comply with the state's long-arm statute and are constrained by the defendant's right to due process under both the federal and Illinois constitutions. Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir.1992); Rollins v. Ellwood, 565 N.E.2d 1302, 1316 (Ill.1990). Blue Cross argues that the district court has personal jurisdiction over the defendant pursuant to the following provisions of Illinois' long-arm statute:
 
 
 5
 (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
 
 
 6
 (1) The transaction of any business within this State;
 
 
 7
 * * *
 
 
 8
 (7) The making or performance of any contract or promise substantially connected with this State.
 
 
 9
 (c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.
 
 
 10
 735 ILCS 5/2-209. Because we find that the district court's personal jurisdiction over Lack is barred by due process considerations, we need not discuss whether jurisdiction would be proper under subsection (a) of Illinois' long-arm statute.
 
 
 11
 Under the Due Process clause, personal jurisdiction may be exercised only where the defendant has established minimum contacts with the forum state so that "traditional notions of fair play and substantial justice" are not offended. Quill Corp. v. North Dakota, 112 S.Ct. 1904, 1910 (1992); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Such contacts exist where the defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Federated Rural Electric Ins. Corp. v. Inland Power and Light Co., 18 F.3d 389, 394 (7th Cir.1994) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Only after it has been determined that these minimum contacts are present, may the court consider other factors, including public policy concerns. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985).
 
 
 12
 Blue Cross argues in favor of personal jurisdiction because Osco negotiated and entered into the contract in Illinois and thus, Blue Cross claims, Lack implicitly agreed to abide by the contract when he became a beneficiary of the Plan. The mere purchase of insurance from the forum state, however, is insufficient to establish personal jurisdiction over the defendant. Federated Rural Electric Ins. Corp., 18 F.3d at 395. Blue Cross also emphasizes that Lack submitted claims to Blue Cross in Illinois over a two-year period which were then processed and paid by checks issued and mailed from Illinois.
 
 
 13
 Initially, we note that the processing of Lack's claims by Blue Cross and the use of checks purportedly issued by an Illinois bank are irrelevant to this discussion since only the actions of the non-resident defendant determine whether the court has jurisdiction over him. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416-17 (1984); Dehmlow, 963 F.2d at 946. Although Blue Cross cites several cases to support the exercise of personal jurisdiction, they are easily distinguishable from this situation in that the non-resident defendants in those cases were all directly involved in extensive contractual negotiations with the plaintiffs, and therefore, voluntarily assented to their contractual obligations. See Burger King Corp., 471 U.S. at 473; In re Spill by the Amoco Cadiz, 699 F.2d 909, 916 (7th Cir.), cert. denied, 464 U.S. 864 (1983); Swissland Packing Co. v. Cox, 627 N.E.2d 686 (Ill.App.Ct. 3d Dist.1994); Autotech Controls Corp. v. K.J. Electric Corp., 628 N.E.2d 990, 996 (Ill.App.Ct. 1st Dist.1993). Because it was Osco, not Lack, that negotiated and finalized the contract with Blue Cross, we do not agree with Blue Cross's assertion that Lack purposefully availed himself of the Plan's benefits. See Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund v. State Farm Mutual Automobile Ins. Co. [hereinafter Trustees v. State Farm ], No. 89 C 0435, 1991 WL 191456 at * 6 (N.D.Ill.1991) (employee did not voluntarily contract with trust); Golden Rule Ins. Co. v. Michely, 555 N.E.2d 1047, 1052 (Ill.App.Ct. 5th Dist.) (insurance broker, not defendant, chose plaintiff's insurance policy), appeal denied, 561 N.E.2d 690 (1990). There is no evidence that Lack, as an Osco employee, had any voice in Osco's decision to contract with Blue Cross. Nor are we convinced that Lack "purposefully availed himself of the privilege of conducting business in Illinois" when he submitted claims to Blue Cross which were subsequently processed by Blue Cross in Illinois.
 
 
 14
 In Golden Rule Ins. Co. v. Michely, the defendant, a resident of Missouri, purchased a health insurance policy from an Illinois insurer through a Missourian broker. 555 N.E.2d at 1049. When Michely subsequently submitted a claim to Golden Rule, the Illinois insurer filed a complaint for declaratory judgment of nonliability in the Illinois circuit court. Id. It was held that the trial court lacked personal jurisdiction over the insured because the Missourian insurance broker suggested the Golden Rule policy and because the only contacts Michely had with the insurer's facility in Illinois were via the broker. Id. at 1052; see also Trustees v. State Farm, 1991 WL 191456 at * 6 (court could not exercise personal jurisdiction over non-resident beneficiaries of a trust fund situated in Illinois). Similarly, we refuse to penalize Lack by haling him into court in Illinois simply because he submitted claims as a beneficiary of his employer's health insurance policy. Blue Cross maintains that Lack could have refused to participate in his employer's health insurance plan. In Burger King Corp., however, the Supreme Court noted that it was the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that determined whether the defendant purposefully established minimum contacts within the forum. 471 U.S. at 479. Lack did not deliberately reach out to an Illinois corporation to obtain health insurance. He merely accepted, without any personal involvement in the negotiation process, the health insurance plan provided by his employer. Such passive participation does not establish the requisite minimum contacts with the State of Illinois. See e.g. Autotech Controls Corp., 628 N.E.2d at 995 (distinguishing between passive and active purchasers).
 
 
 15
 In addition, we note that Lack's medical claims arose from an automobile accident occurring in Arizona. The injuries were incurred and treated in Arizona. Lack's lawsuit against the tortfeasor, which forms the basis of Blue Cross' reimbursement claim, was resolved in the Arizona court system. Moreover, the record indicates that Lack's refusal to reimburse Blue Cross rests on his belief that Arizona law relieves him of any reimbursement responsibility.
 
 
 16
 For the foregoing reasons, we find that forcing Lack to defend this lawsuit in Illinois violates due process.
 
 
 17
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that a "Statement as to Need of Oral Argument" could be filed. See Fed.R.App.P. 34(a); Cir.R. 34(f). The Plaintiff-Appellant filed a statement requesting oral argument. The Defendant-Appellee had requested telephonic oral argument with the filing of his appellate brief. Upon consideration of the parties' statements, the requests for oral argument are denied and the appeal is submitted on the brief and the record